# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wolinsky v. Kadison*, 2013 IL App (1st) 111186

---

| | |
|---|---|
| Appellate Court Caption | DEBRA RAE WOLINSKY, Plaintiff-Appellant and Cross-Appellee, v. JOSEPH L. KADISON, STANLEY K. FEINBERG and DENNIS A. BELL, Individually and as the Board of Directors of Ambassador House Condominium Association, Defendants-Appellees (Ambassador House Condominium Association, Defendant-Appellee and Cross-Appellant). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-11-1186, 1-11-1208 cons. |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against defendants individually and as members of a condominium association alleging that they violated the association's bylaws and discriminated against plaintiff as an unmarried woman with children by refusing to allow her to purchase a condominium unit, the grant of partial summary judgment for plaintiff on liability and the denial of defendants' motion for summary judgment on plaintiff's breach of fiduciary duty claim were affirmed, but the denial of plaintiff's motion for the appointment of special representatives for deceased members of the board and the grant of summary judgment to defendants on plaintiff's request for equitable prejudgment interest on the breach of fiduciary duty claim were both reversed and the cause was remanded for a determination of whether such an award was warranted. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-L-7576; the Hon. Marcia Maras and the Hon. Thomas L. Hogan, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on Appeal

Joel Ostrow, of Bannockburn, for appellant.

P. Shawn Wood, Jason Stiehl, and Jordan P. Vick, all of Seyfarth Shaw LLP, of Chicago, for appellee.

Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chtrd., of Chicago, for other appellees.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.

Presiding Justice Lampkin and Justice Gordon concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, the circuit court of Cook County awarded the plaintiff, Debra Wolinsky, $56,992 in damages on her breach of fiduciary duty claim against the defendant, Ambassador House Condominium Association. The plaintiff appeals. On appeal, she contends that the amount of the damages award was against the manifest weight of the evidence. She further contends the circuit court committed the following errors: (1) dismissed her discrimination claim for lack of subject matter jurisdiction; (2) granted a motion to strike her jury demand; (3) granted summary judgment, eliminating her punitive damages claim; (4) denied her motion to appoint a special administrator to represent the interests of the deceased individual defendants; and (5) denied her motion to file a second amended complaint. The defendant filed a cross-appeal, contending that the circuit court erred when it granted partial summary judgment to the plaintiff on her breach of fiduciary duty claim and denied the defendant's motion for summary judgment on that claim.

¶ 2    This case has been pending for some 34 years and has generated two prior appeals. See *Wolinsky v. Kadison*, 114 Ill. App. 3d 527 (1983) (*Wolinsky I*), and *Wolinsky v. Kadison*, No. 1-04-0169 (2004) (unpublished order pursuant to Supreme Court Rule 23) (*Wolinsky II*). We deem it necessary to set forth certain background facts to place the issues raised in this appeal in perspective.

¶ 3                      I. BACKGROUND

¶ 4    The plaintiff, divorced and single, had been a resident of the Ambassador House since 1976. Initially, she rented Unit 4D. In 1977, the Ambassador House was converted to condominiums. Leonard Chavin purchased Unit 4D for the plaintiff. Mr. Chavin was married to Marlene Chavin. However, the plaintiff and he had a 19-year sexual relationship, and he fathered three children with the plaintiff.

¶ 5    In August 1978, the plaintiff submitted a document to the Association's board of directors (the Board), notifying it of her intent to purchase Unit 21F, a two-bedroom unit, for $118,000.[1] Shortly thereafter, the Board received another offer to purchase Unit 21F from Dr. Frank Oliver, a widower. Without conducting a vote of the unit owners, required by the bylaws, the Board exercised the right of first refusal and rejected the plaintiff's offer to purchase Unit 21F. The Board purchased Unit 21F for $118,000 and then sold the unit to Dr. Oliver for $120,000.

¶ 6    In November 1978, the plaintiff purchased Unit 7B for $143,000. The unit was in a land trust with the plaintiff as the beneficiary. Both the plaintiff and Mr. Chavin signed the mortgage.

¶ 7                          A. Circuit Court Proceedings and First Appeal

¶ 8    In 1979, the plaintiff filed case number 79 L 12302,[2] a three-count complaint for damages against the defendants, Joseph L. Kadison, Stanley K. Feinberg, David Lefkovits, Edward Targ, Dennis A. Bell, individually and as directors of the Ambassador House Condominium Association (collectively the directors); Ambassador House Condominium Association (the Association); Andra Addis; Eugene Matanky and Associates, Inc., an Illinois corporation; and Eugene Matanky and Associates Management Corporation, an Illinois corporation.[3] Subsequently, the plaintiff filed an amended complaint. Relevant to this appeal, count I alleged that the Association and the directors failed to comply with the bylaws in exercising the right of first refusal, depriving the plaintiff of her right to own property and preventing her from remaining a member of the Association. Count II alleged that all of the defendants violated a City of Chicago ordinance prohibiting discrimination in the purchase or lease of a condominium based on sex or marital status by exercising the right of first refusal because the plaintiff was an unmarried female and would reside in the unit with children. Count III alleged willful and wanton conduct on the part of the directors, Ms. Addis and the two Matanky corporations, based on their disregard for the bylaws and the laws of the State of Illinois.

¶ 9    In 1981, the circuit court dismissed the amended complaint for failure to state a cause of action, and the plaintiff appealed. This court determined that in count I, the plaintiff's allegation that the defendant and the individual defendants failed to secure the vote of two-thirds of the owners required by the bylaws before exercising its right of first refusal stated a cause of action for breach of fiduciary duty. This court further determined that her allegation in count II, that the directors' refusal to let her purchase Unit 21F because she was an unmarried female and would occupy the unit with children, stated a cause of action for

[1]At that time, the plaintiff was pregnant and subsequently gave birth to twins.

[2]The case was later renumbered.

[3]Mr. Targ, Mr. Lefkovits, Ms. Addis, Eugene Matanky and Associates, Inc., and Eugene Matanky and Associates Management Corporation are not parties to this appeal.

violation of the Chicago condominium ordinance, prohibiting discrimination with regard to the purchase and lease of condominium units based on sex or marital status. *Wolinsky I*, 114 Ill. App. 3d at 535. Finally, this court determined that count III had stated a cause of action for willful and wanton disregard for the bylaws on the part of the individual defendants. We reversed the dismissal of the amended complaint and remanded for further proceedings, but affirmed the circuit court's dismissal of count III of the amended complaint against Ms. Addis and the two Matanky corporations.

¶ 10                    B. Proceedings on Remand and Second Appeal

¶ 11      On August 5, 1988, the plaintiff filed a motion for partial summary judgment on count I as to liability only. On November 28, 1988, Circuit Court Judge Willard Lassers granted the motion as to the Association and the individual defendants but excluded the estates of Messrs. Targ and Lefkovits from the order.

¶ 12      In 2003, the circuit court dismissed the amended complaint based on *laches* and pursuant to its authority to control its own docket. The plaintiff appealed. This court reversed the dismissal and remanded for further proceedings. *Wolinsky II*, slip order at 15.

¶ 13                    C. Circuit Court Proceedings After 2004 Remand
¶ 14                    1. *Dismissal of Individual Defendants and*
                        *Motion to File Amended Complaint*

¶ 15      On December 17, 2007, the attorney for the individual board member defendants filed a motion to spread of record the deaths of Messrs. Kadison, Feinberg, and Bell and to dismiss them from the plaintiff's lawsuit. The plaintiff did not object to the dismissal but requested that a special representative be appointed to protect the proceeds of the liability insurance policy that covered the individual defendants.

¶ 16      On April 18, 2008, Circuit Court Judge Marcia Maras ruled on the motion. She found that the plaintiff was aware of the deaths when the motion to dismiss the case was filed in 2003. Judge Maras struck the motion to dismiss for lack of standing but, on her own motion, she dismissed the individual defendants and denied the plaintiff's request to appoint a special representative.

¶ 17                    2. *The Association's Motions for Summary Judgment, to Dismiss*
                        *and to Strike the Plaintiff's Jury Demand*

¶ 18      On December 3, 2007, the Association filed its motion for summary judgment on both counts of the amended complaint. The Association also filed a motion pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2006)) (the Code) to dismiss count II of the amended complaint for lack of subject matter jurisdiction. On February 5, 2008, the Association filed a motion to strike the plaintiff's jury demand.

¶ 19      On October 20, 2009, Judge Maras denied the Association's motion for summary judgment as to count I. She refused to reconsider Judge Lassers' grant of partial summary

judgment to the plaintiff on liability, noting that in *Wolinsky I*, "the Court found no question of fact as to whether there was strict compliance with the declaration and bylaws as did Judge Lassers' in his decision of [November 28, 1988]. As a result, Judge Lassers granted partial summary judgment as to *** liability on the breach of fiduciary duty counts." Judge Maras further determined that the Association could not rely on the business judgment rule because one of the factors to consider was whether the directors complied with the bylaws and declaration. Judge Maras also found that the breach of fiduciary duty was not a tort and, therefore, a proximate cause analysis did not apply.

¶ 20    Judge Maras granted summary judgment to the Association on the plaintiff's prejudgment interest and punitive damages claims. Judge Maras also dismissed count II for lack of subject matter jurisdiction, finding that the plaintiff had failed to exhaust her administrative remedies.

¶ 21    On March 31, 2009, Judge Maras denied both parties' motions for reconsideration of her summary judgment rulings. Judge Maras granted the Association's motion to strike the plaintiff's jury demand. She denied the plaintiff's motion for leave to file an amended complaint.

¶ 22    *3. Bench Trial*

¶ 23    The sole issue at trial was the amount of damages the plaintiff was entitled to for the Association's breach of fiduciary duty. The parties entered into a stipulation as to the applicable mortgage rates for the two units. The plaintiff sought $86,000 based on the difference in the purchase price between Unit 21F, the unit she wished to purchase, and Unit 7B, the unit she ultimately purchased, the difference in mortgage payments, an alleged difference in the current market value of the two units and the money she had expended for improvements to Unit 7B. The plaintiff also sought $300,000 to $500,000 in additional damages for "time value" or "lost net worth."

¶ 24    At trial, Nicholas Solano, a real estate appraiser, testified as the plaintiff's expert witness. Mr. Solano calculated the present value of Unit 21F at $370,000 and Unit 7B at $355,000. Through his course work in college and his training as an appraiser, he learned to do discounted cash flow analysis and to compute the time value of money, which he calculated to be $323,000. The Association's expert witness, Dale Kleszynski, also a real estate appraiser, testified that present value of Unit 21F was $350,000 and the present value for Unit 7B was $370,000.

¶ 25    Circuit Court Judge Thomas Hogan awarded damages to the plaintiff in the amount of $56,992, based on the difference in the down payment, purchase price and additional mortgage payments required for the purchase of Unit 7B as opposed to the purchase of Unit 21F. In calculating the amount of damages, Judge Hogan found that the plaintiff had not sustained her burden of proving the current difference in value between Unit 21F and 7B or her other claimed damages. Judge Hogan also rejected Mr. Solano's net worth calculation, and therefore, he refused to award the plaintiff "her lost net worth."

¶ 26    This appeal and cross-appeal followed.

## II. ANALYSIS

### A. Violation of Discrimination Ordinance
#### (Count II of the Amended Complaint)

The plaintiff contends that Judge Maras erred when she granted the Association's section 2-619(a)(1) motion and dismissed count II of her amended complaint for lack of subject matter jurisdiction because the plaintiff had not exhausted her administrative remedies. The issue of subject matter jurisdiction was not raised by the parties and was not addressed by this court in the original appeal in this case. See *Wolinsky I*, 114 Ill. App. 3d 527. However, the lack of subject matter jurisdiction cannot be waived and may be raised at anytime, even on appeal. *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 761 (1997).

### 1. *Applicable Standards of Review*

Review of a dismissal under section 2-619 of the Code is *de novo*. *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 954-55 (2008). Whether a circuit court has subject matter jurisdiction presents a question of law and is subject to *de novo* review. See *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26. The *de novo* standard of review also applies to construction of a statute. *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 916 (2005).

### 2. *Discussion*
#### a. Subject Matter Jurisdiction

The issue of exhaustion of remedies presents a question of subject matter jurisdiction. *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 347 (2007). Where an administrative agency has exclusive jurisdiction over claims arising under an ordinance, a party must first exhaust his remedies under the ordinance before seeking relief in the circuit court. See *Flynn v. Hillard*, 303 Ill. App. 3d 119, 124 (1999). Absent a final agency determination, the circuit court lacks jurisdiction to consider the matter. *NDC LLC*, 374 Ill. App. 3d at 347.

In count II of her amended complaint, the plaintiff alleged a violation of the Chicago condominium ordinance which prohibits discrimination with regard to the purchase or lease of condominium units. Chicago Municipal Code, ch. 100.2, § 100.2-4 (1978). She alleged that the Association exercised its right of first refusal based on her sex and her marital status, *i.e.*, an unmarried female with two children.

The condominium ordinance was enacted in 1978 and provided in pertinent part as follows:

> "100.2-4. No person shall be denied the right to purchase or lease a unit because of race, religion, sex, sexual preference, marital status or national origin.
>
> * * *
>
> 100.2-9. The Commissioner of Consumer Sales, Weights and Measures shall administer this chapter and may adopt rules and regulations for the effective administration of this chapter.

100.2-10. The rights, obligations and remedies set forth in this chapter shall be cumulative and in addition to any others available at law or equity. The Department or any prospective purchaser, purchaser or owner of a unit may seek compliance of any provision of this chapter, provided, however, that only the Department may enforce the provisions of Section 100.2-11. In any action brought to enforce any provision of this chapter except Section 100.2-11 the prevailing party shall be entitled to recover, in addition to any other remedy available, his reasonable attorney fees." Chicago Municipal Code, ch. 100.2, § 100.2-10 (1978).

Section 100.2-11 provided for the imposition of mandatory monetary penalties for violations of the condominium ordinance and incarceration for repeated offenses. Chicago Municipal Code, ch. 100.2, § 100.2-11 (1978).

¶ 37　　We find *Flynn* instructive. In that case, a probationary police officer filed a petition for administrative review of a decision by the superintendent of the Chicago police department terminating his employment. The circuit court dismissed the petition for lack of jurisdiction. On appeal, *inter alia*, the petitioner contended that the circuit court should have heard his claim that he was terminated because he was a homosexual. The appellate court found that the officer was alleging a violation of the Chicago human rights ordinance, which prohibited employment discrimination based upon a person's sexual orientation. *Flynn*, 303 Ill. App. 3d at 124 (citing Chicago Municipal Code § 2-160-030 (2002)).

¶ 38　　The court determined that the circuit court lacked jurisdiction to hear the ordinance violation claim, explaining as follows:

"The ordinance provides that the Chicago Commission on Human Relations shall receive, investigate, and prosecute complaints of discrimination under the ordinance. [Citation.] Thus, the Commission has exclusive jurisdiction over claims arising under the ordinance. Therefore, [the petitioner] must first exhaust his remedies under the ordinance before bringing his discrimination claim to the circuit court." *Flynn*, 303 Ill. App. 3d at 124.

¶ 39　　The condominium ordinance provides that the commissioner of weights and measures "shall" administer the provisions of the ordinance. Unlike the human rights ordinance, the provisions of the condominium ordinance do not vest the commissioner with exclusive jurisdiction over complaints for violations. While the commissioner "may" adopt rules and regulations for administering the ordinance, there is no indication that any rules or regulations had been adopted to govern the filing and hearing of violation complaints at the time of these proceedings. Only the right to impose fines or imprisonment penalties was exclusively reserved to the "Department."

¶ 40　　Moreover, section 100.2-10 of the condominium ordinance provided that the "rights, obligations and remedies" were in addition to ones already available at law or in equity. In *Wolinsky I*, this court found that "the broad provision that remedies under the ordinance be cumulative and in addition to other remedies reflects a legislative intent that actions for damages be available for violations of any section of the ordinance, including the antidiscrimination section." *Wolinsky I*, 114 Ill. App. 3d at 535.

¶ 41　　The plaintiff's position is further supported by the timing of the enactment of the Illinois

Human Rights Act (Ill. Rev. 1981, ch. 68, ¶ 1-101 *et seq.*) (the Act). The Act was enacted in 1979 and was effective July 1, 1980.

¶ 42    In *Williams v. Naylor*, 147 Ill. App. 3d 258 (1986), the plaintiff filed a civil complaint for damages alleging a violation of Chicago's fair housing ordinance based on the defendants' refusal to rent an apartment to her because she was an unmarried woman. This court upheld the dismissal of the complaint, relying, *inter alia*, on *Dilley v. Americana Health Care Corp.*, 129 Ill. App. 3d 537 (1984). The court in *Williams* noted that, in reviewing the dismissal of a civil complaint alleging employment discrimination, the court in *Dilley* examined the transcripts of the legislative debates prior to the enactment of the Illinois Human Rights Act (Pub. Act 81-1216 § 1-101 (eff. July 1, 1980)). The court in *Williams* relied on the court's determination in *Dilley* "that the objective of the legislature in adopting the [Illinois Human Rights] Act was to create uniformity in the area of civil rights protection through the implementation of a single, comprehensive scheme of procedures and remedies and the concomitant elimination of private rights of action." *Williams*, 147 Ill. App. 3d at 264.

¶ 43    Pertinent to the present case, in *Williams*, this court quoted a portion of the debate in which the Senator introducing the bill pointed out that, " ' "[c]urrently, our discrimination laws are enforced in the courts, both by criminal and civil actions and through three executive agencies." ' " (Emphasis omitted.) *Williams*, 147 Ill. App. 3d at 264 (quoting *Dilley*, 129 Ill. App. 3d at 545, quoting 81st Ill. Gen. Assem., Senate Proceedings, May 25, 1979, at 283). This court found that the ordinance enabling the City of Chicago to enact a fair housing ordinance was included in the reference to the State's discrimination laws. *Williams*, 147 Ill. App. 3d at 264-65.

¶ 44    Both civil and administrative remedies were available to parties alleging discrimination violations until the enactment of the Illinois Human Rights Act. The plaintiff filed her original complaint in 1979. The Illinois Human Rights Act did not go into effect until July 1, 1980. Moreover, while providing that the commissioner of consumer sales, weights and measures was to administer the condominium ordinance, the Association has not identified any procedure prescribed by the commissioner for filing a violation claim, having a hearing or an appeal process. We conclude that the plaintiff could pursue her civil remedy, and that the circuit court had subject matter jurisdiction of alleged condominium ordinance violation.

¶ 45                    b. Alternative Ground for Dismissal of Count II

¶ 46    The Association argues that the dismissal of count II should be upheld because the undisputed evidence defeats the plaintiff's discrimination claim. The Association sought summary judgment as to count II of the amended complaint. Judge Maras dismissed count II for lack of subject matter jurisdiction and did not rule on whether the Association was entitled to summary judgment on count II.

¶ 47    Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) vests the reviewing court with the power to enter any order that a trial court can enter. *Oak Grove Jubilee Center, Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 986 (2004). It is the judgment of the lower court not its reasoning that we review, and we may uphold the court's judgment on any grounds called

for by the record. *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 331 (2009). Nonetheless, where the trial court has not ruled on a motion for summary judgment, reviewing courts have declined to enter summary judgment where it is unclear from the record that the nonmovant received an adequate opportunity to respond. See *Oak Grove Jubilee Center, Inc.*, 347 Ill. App. 3d at 986-87; *Swieton v. City of Chicago*, 129 Ill. App. 3d 379, 385 (1984). In this case, the Association's motion, the plaintiff's response and the Association's reply along with all the exhibits thereto are contained in the record. Therefore, we will address the Association's alternative ground for upholding the dismissal of count II.

¶ 48    We apply the *de novo* standard of review to the disposition of a motion for summary judgment. *Millennium Park Joint Venture, LCC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006). Summary judgment is precluded where the material facts are disputed or where reasonable people might draw different conclusions from undisputed facts. *Prowell v. Loretto Hospital*, 339 Ill. App. 3d 817, 822 (2003). In determining whether a genuine issue of material fact exists, the court must construe the pleadings, affidavits, depositions and other relevant material submitted in connection with the motion against the movant and liberally in favor of the nonmovant. *Prowell*, 339 Ill. App. 3d at 822.

¶ 49    In support of summary judgment on count II, the Association alleged that it had independent and valid reasons for exercising its right of first refusal in response to the plaintiff's offer to purchase Unit 21F. Those reasons included: the plaintiff's financial instability, the plaintiff's sexual relationship with a married individual, complaints from other unit owners regarding excess traffic and noise emanating from the plaintiff's unit, and the plaintiff's acknowledgment that she was selling stolen fur coats out of her unit. The Association supported its allegations with excerpts from the depositions of defendant board members, Messrs. Kadison and Feinberg, as well as the plaintiff's deposition.

¶ 50    In response, the plaintiff maintained that the mortgage payments and assessments on her Unit 4D had always been paid, that while she listed $10,000 a year, as her income when she submitted her offer to purchase Unit 21F, the Association knew she also received support from Mr. Chavin, and that the directors and the Association were unaware of her alleged illegal activities at the time of her offer to purchase Unit 21F.

¶ 51    In *Wolinsky I*, this court held that the plaintiff had stated a cause of action for discrimination under the condominium ordinance. The court determined "if a right of first refusal is exercised so that a prospective purchaser is unable to purchase a unit because of his or her race, religion, sex, sexual preference, marital status or national origin, the ordinance has been violated." *Wolinsky I*, 114 Ill. App. 3d at 535. In response to the Association's summary judgment motion on count II, the plaintiff was required to put forth facts sufficient to support her claim that the Association's exercise of its right of first refusal was based on her sex or her marital status. *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 657 (1993).

¶ 52    Factual disputes existed regarding the plaintiff's financial situation, whether her conduct disturbed the other unit owners and whether the fact she was having a sexual relationship with a married man made her an undesirable presence in the building. However, factual disputes do not preclude summary judgment where the disputed facts are not material to the essential elements of the cause of action or defense. *First National Bank of Evergreen Park v. Lambert*, 109 Ill. App. 3d 177, 181 (1982).

¶ 53    The following undisputed facts and the reasonable inferences drawn from them defeat the plaintiff's claim of discrimination based on her sex and marital status. The plaintiff resided in Unit 4D as an unmarried woman with one child. Following the Association's exercise of the right of first refusal with respect to Unit 21F, the plaintiff was then permitted to purchase Unit 7B. At the time she purchased Unit 7B, her status was that of an unmarried woman, now with three children. It is unreasonable to infer from these facts that the Association refused to allow her to purchase Unit 21F because she was an unmarried female with one child, since shortly thereafter, the Association did not exercise the right of first refusal in connection with her purchase of Unit 7B, despite the fact that she was still an unmarried female and now with three children living with her. In addition, the Association allowed her to purchase Unit 7B despite any concern it had as to the plaintiff's conduct, her financial situation, her relationship with Mr. Chavin and the criminal conduct the Association believed she was involved with at the time the plaintiff offered to purchase Unit 21F.

¶ 54    Based on the undisputed facts and reasonable inferences, we find that, as a matter of law, the Association's exercise of the right of first refusal in connection with the plaintiff's offer to purchase Unit 21F was not based on the plaintiff's sex or marital status. The Association was entitled to summary judgment on count II of the amended complaint.

¶ 55                    B. Breach of Fiduciary Duty
                    (Count I of the Amended Complaint)

¶ 56    On cross-appeal, the Association maintains that Circuit Court Judge Willard Lassers' 1988 ruling granting partial summary judgment as to liability on the plaintiff 's breach of fiduciary duty claim, and Judge Maras' 2008 ruling denying its motion for summary judgment on that claim were erroneous. While conceding that the required vote was not taken, the Association maintains that it was entitled to summary judgment on the plaintiff's breach of fiduciary duty claim under the business judgment rule and because the plaintiff could not establish proximate cause between the breach and the damages she alleged.

¶ 57                    1. *Law of the Case*

¶ 58    The Association argues that both Judge Lassers and Judge Maras misinterpreted this court's decision in *Wolinsky I* and believed that under the "law of the case" doctrine, they could not look beyond the Association's failure to comply with the bylaws but were required to find the Association liable on the breach of fiduciary duty claim.

¶ 59    While questions of law actually decided in a previous appeal are binding, the merits of

the controversy not decided by the reviewing court do not become the law of case. *Aguilar v. Safeway Insurance Co.*, 221 Ill. App. 3d 1095, 1101 (1991). In *Wolinsky I*, this court held that the plaintiff's allegation that the directors' failure to comply with the bylaws requirement to secure a two-thirds vote of the owners before invoking the right of first refusal stated a cause of action for breach of fiduciary duty. The decision made no factual determination as to that allegation. See *Wolinsky I*, 114 Ill. App. 3d at 534 ("Since plaintiff alleged that defendants exercised a right of first refusal without first obtaining the requisite affirmative vote of the ownership, we conclude that plaintiff stated a cause of action for breach of a fiduciary duty ***.").

¶ 60    For purposes of law of the case, *Wolinsky I* established only that the plaintiff had stated a cause of action for breach of fiduciary duty. Therefore, the law of the case did not preclude the Association from raising the business judgment rule or the lack of proximate cause in its summary judgment motion. See *Aguilar*, 221 Ill. App. 3d at 1101 (where the dismissal of the case for failure to state a cause of action was reversed and remanded for reinstatement of the complaint and further proceedings, the law of the case did not preclude the defendant from filing affirmative defenses); but see *Martin v. Federal Life Insurance Co.*, 164 Ill. App. 3d 820 (1987) (where dismissal of a complaint for failure to state a cause of action was reversed and the cause remanded for further proceedings, under the law of the case, the grant of summary judgment to the defendant on remand was reversed because the defendant had not asserted the defense in the original proceedings).

¶ 61                          2. *Business Judgment Rule*

¶ 62    The fiduciary duty owed by the board of directors of a condominium association requires that the board members act in a manner reasonably related to the exercise of that duty and the failure to do so results in liability for the board and its individual members. *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 62. The purpose of the business judgment rule is to protect directors from liability for honest mistakes in judgment. *Goldberg*, 2012 IL App (1st) 110620, ¶ 63. When the board properly exercises its business judgment, the court will not find the board's interpretation a breach of fiduciary duty. *Goldberg*, 2012 IL App (1st) 110620, ¶ 62. Absent evidence of bad faith, fraud, illegality, or gross overreaching, the courts will not interfere with the exercise of business judgment by corporate directors. *Goldberg*, 2012 IL App (1st) 110620, ¶ 63.

¶ 63    It is a prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties. The business judgment rule will not protect directors who fail to use due care. *Goldberg*, 2012 IL App (1st) 110620, ¶ 63. "[T]he business judgment rule is defeated where directors act without 'becoming sufficiently informed to make an independent business decision.'" *Goldberg*, 2012 IL App (1st) 110620, ¶ 64 (quoting *Ferris Elevator Co. v. Neffco, Inc.*, 285 Ill. App. 3d 350, 354 (1996)).

¶ 64    In *Davis v. Dyson*, 387 Ill. App. 3d 676 (2008), condominium unit owners sued the association and directors for breach of fiduciary duty over a loss resulting from the embezzlement of funds from the condominium association. This court held that the business judgment rule did not apply to protect the board of directors where the board violated the

-11-

Illinois Condominium Act by failing to purchase the proper insurance to protect the association's funds, failed to review the association's monthly bank statements which would have revealed the embezzlement and failed to obtain the advice of counsel to learn about their duties as to insurance coverage, association finances or personnel supervision. *Davis*, 387 Ill. App. 3d at 695.

¶ 65 This court has applied the business judgment rule to defeat breach of fiduciary duty claims where the board's actions were not permitted under the condominium declaration. In *Carney v. Donley*, 261 Ill. App. 3d 1002 (1994), the plaintiff sued the board of managers and certain unit owners alleging the board had breached its fiduciary duty to him by approving extensions to balconies of three of the condominium units, which damaged the common elements. The plaintiff alleged that the board knowingly acted contrary to the declaration. In response, the defendants argued that pursuant to the condominium declaration the board had authority to approve the construction of the balcony extensions.

¶ 66 On review, this court held, *inter alia*, that, even though the declaration required a unanimous vote of the unit owners if the common elements were affected, the board's interpretation of the declaration did not breach its fiduciary duty to the plaintiff. The board had sought legal advice before reaching its decision and the board member requesting the balcony extensions had disclosed his interest in the project and recused himself from the vote. The court concluded that "[u]nder these circumstances, we cannot say that the Board acted unreasonably or failed to exercise properly its business judgment." *Carney*, 261 Ill. App. 3d at 1011.

¶ 67 Similarly, in *Goldberg*, the plaintiff sued the board and the individual directors for breach of fiduciary duty for refusing to pay for repairs to her unit based on their interpretation of the condominium declaration. This court upheld the denial of the claim; the board had sought and relied on legal advice in concluding that the board did not have authority to pay for those repairs. *Goldberg*, 2012 IL App (1st) 110620, ¶ 65.

¶ 68 The Association points out that the members of the Board were attorneys. However, there is no evidence that the Board relied on the legal advice of its members in rejecting the plaintiff's offer to purchase Unit 21F. In any event, such advice could not be considered unbiased. While Mr. Feinberg testified that he consulted with two outside attorneys, neither attorney was able to provide him with any advice. Therefore, neither *Goldberg* nor *Carney* supports the Association's argument.

¶ 69 According to the deposition testimony of Mr. Feinberg and Mr. Kadison, the Board's reasons for exercising the right of first refusal as to Unit 21F was the plaintiff's lack of income, her dependency on Mr. Chavin for support, her 1976 bankruptcy, and the complaints about her conduct from other unit owners and the building managers. Based on those considerations, the Association maintains that, in the interest of all the unit owners, it exercised its business judgment by invoking its right of first refusal in connection with the plaintiff's offer to purchase Unit 21F.

¶ 70 The Association's argument is undermined by its own actions. It is undisputed that in September 1978, after the plaintiff's offer to purchase Unit 21F was rejected, Dr. Oliver purchased Unit 21F for $120,000. In November 1978, the Board did not exercise its right of

first refusal when the plaintiff purchased Unit 7B for $143,000. The Association suggests that allowing the plaintiff to purchase Unit 7B was in response to a statement alleged to have been made by Mr. Chavin that he would continue making offers on two-bedroom units until the plaintiff was allowed to purchase one. However, to allow the plaintiff to purchase Unit 7B because of Mr. Chavin's statement does not reflect the Board's exercise of its "business judgment."

¶ 71    We conclude that the business judgment rule does not apply to protect the Association.

¶ 72                                          3. *Proximate Cause*

¶ 73    The Association argues that it was entitled to summary judgment because the damages claimed by the plaintiff were not caused by the Board's breach of its fiduciary duty to the plaintiff, *i.e.*, the failure to conduct a vote by the unit owners to authorize the exercise of the right of first refusal. In denying summary judgment to the Association, Judge Maras found that the proximate cause analysis was not applicable to a breach of duty claim because it was not a tort. However, in order to establish a claim for breach of fiduciary duty, the plaintiff must allege the existence of a fiduciary duty, the breach of that duty, and damages proximately caused by the breach. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 17; see *Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111371, ¶ 26 (attorneys' conflicts of interest only satisfied the breach element but not the causation element of the breach of fiduciary claim).

¶ 74    The Association maintains that none of the damages claimed by the plaintiff were proximately caused by the failure of the Board to secure the required two-thirds vote of the unit owners prior to exercising its right of first refusal. The Association argues that the plaintiff cannot prove any pecuniary loss since Mr. Chavin purchased Unit 7B for the plaintiff. It further maintains that the plaintiff or Mr. Chavin made the decision to purchase Unit 7B for $25,000 more than the $118,000 offer the plaintiff made to purchase Unit 21F. In addition, having made the choice to pay more money for a less desirable unit, the plaintiff then chose to make extensive repairs to Unit 7B.

¶ 75    The plaintiff submits that, but for the Board's breach of its fiduciary duty, she would have been residing in a more desirable unit and had years of smaller mortgage payments. The plaintiff points out that at the time she purchased Unit 7B, mortgage rates were rising, she was pregnant with twins and wanted to remain in the building. As a result of the Board's breach, she was forced to pay $143,000 for Unit 7B, instead of $118,000 for Unit 21F. According to the plaintiff, while also a two-bedroom unit, Unit 7B was a less desirable unit, and its condition was such that the plaintiff had to invest large sums in making the necessary repairs.

¶ 76    In this case, both parties sought summary judgment on the issue of liability under the breach of fiduciary duty claim. Where parties have filed cross-motions for summary judgment, they invite the court to determine the issue as a matter of law and enter judgment in favor of one of the parties. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215 (2001).

¶ 77    Proximate cause is a question of fact to be determined by the trier of fact; "however, this

-13-

rule is subject to the limitation that if on all the evidence reasonable men could come to only one conclusion, the question of proximate cause is to be decided as a matter of law." *Sokolowski v. All Points Distribution Service, Inc.*, 243 Ill. App. 3d 539, 542 (1993). In this case, the undisputed facts establish that the Board failed to conduct the vote required by the bylaws prior to exercising the right of first refusal to reject the plaintiff's offer to purchase Unit 21F, a two-bedroom unit, for $118,000. The plaintiff then purchased Unit 7B, also a two-bedroom unit for $142,500. It is further undisputed that the Board did not exercise the right of first refusal with respect to the plaintiff's purchase of Unit 7B. Finally, it is undisputed that at the time of the plaintiff's offer to purchase Unit 21F, she resided in Unit 4D, a one-bedroom with one child, and she was pregnant.

¶ 78    Relying on two federal cases, the Association maintains that the plaintiff was required to prove that she would have prevailed had the Board conducted the vote required by the bylaws. See *Dannhausen v. Business Publications Audit of Circulation, Inc.*, 797 F.2d 548 (7th Cir. 1986); *Bigbie v. Local 142, International Brotherhood of Teamsters*, No. 81-C-4507 (N.D. Ill. Jan. 20, 1983). However, this court has noted that unreported federal district court orders are neither binding nor precedential before Illinois courts and that even reported federal circuit and district decisions are only persuasive authority in Illinois state courts. *Kerbes v. Raceway Associates, LLC*, 2011 IL App (1st) 110318, ¶ 34. The Association's reliance on *Foster v. Chicago Board of Election Commissioners*, 176 Ill. App. 3d 776 (1988), is also misplaced. *Foster* involved a complaint that election laws were not followed in a local option election to prohibit the sale of alcoholic beverages. The reviewing court noted that the complaint was properly dismissed because it did not allege that, in the absence of the alleged violations, the outcome of the vote would have changed. *Foster*, 176 Ill. App. 3d at 778. The present case does not involve an "election," and we are not persuaded that such case law is applicable to votes required by the bylaws of private condominium associations.

¶ 79    Based on the undisputed facts and the reasonable inferences therefrom, we conclude that, as a matter of law, there was proximate cause between the Board's breach of its fiduciary duty to the plaintiff and her claim for damages. The grant of partial summary judgment to the plaintiff as to liability on the breach of fiduciary duty claim and the denial of summary judgment to the Association on that claim was proper.

¶ 80                    C. Appointment of Special Representative

¶ 81    The plaintiff contends that Judge Maras abused her discretion when she denied the plaintiff's motion to appoint a special representative for Messrs. Kadison, Feinberg and Bell, the deceased individual defendants. Attorneys for these deceased defendants argue that the plaintiff's motion was untimely and therefore, it was not an abuse of discretion to deny the motion.

¶ 82    Section 2-1008(b)(2) of the Code provides in pertinent part as follows:

"If a person against whom an action has been brought dies, and the cause of action survives and is not otherwise barred, his or her personal representative shall be substituted as a party. *** If a party elects to have a special representative appointed under this paragraph (2), the recovery shall be limited to the proceeds of any liability

-14-

insurance protecting the estate ***.

If a motion to substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party." 735 ILCS 5/2-1008(b)(2) (West 2006).

¶ 83 Attorneys for the deceased defendants point out that in 2004, in *Wolinsky II*, this court noted that all five of the individual defendants were deceased. They maintain the plaintiff was aware by the end of 2004 that these defendants were deceased, yet she waited three years to request that a special representative be appointed.[4]

¶ 84 It is undisputed that the plaintiff filed a motion to substitute a special representative within 90 days of the filing of the motion to suggest the deaths of Messrs. Kadison, Feinberg and Bell of record. In *Ferak v. Elgin, Joliet & Eastern Ry. Co.*, 55 Ill. 2d 596 (1973), three years had elapsed between the death of the plaintiff and the filing of the motion to suggest the death of record and to appoint the decedent's son as special administrator. In determining whether the survival action was barred by the delay, the supreme court held that the Illinois procedural rules "contemplate only delay between the suggestion of death to the court and the substitution of parties; the date of actual death is not a factor." *Ferak*, 55 Ill. 2d at 600. The 90-day period under section 2-1008(b)(2) is not triggered by the plaintiff's knowledge of a defendant's death but by a formal notice to the court of the defendant's death.

¶ 85 Moreover, "when determining whether there was error in permitting a party substitution under section 2-1008(b), the overriding consideration is whether substantial justice is being done between the litigants and whether it was reasonable, under the circumstances, to compel the other party to proceed on the merits." *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 583 (1997) (citing *Stickler v. National Dairy Products Corp.*, 67 Ill. 2d 229, 234 (1977)). "[T]he ultimate question on review is whether the trial court properly exercised its discretion in an attempt to serve justice." *Senese*, 289 Ill. App. 3d at 583. Even where the motion to substitute was untimely, in the absence of prejudice to the opposing party, the dismissal of the case was held to be an abuse of discretion. See *Stickler*, 67 Ill. 2d at 234.

¶ 86 We conclude that the plaintiff's motion for the appointment of a special representative was timely under section 2-1008(b). Even if untimely, the record reveals no prejudice to the decedent defendants. Therefore, Judge Maras abused her discretion when she denied the plaintiff's motion to appoint a special representative for these deceased individual defendants.

¶ 87          D. Denial of Leave to File Second Amended Complaint

¶ 88 Following the denial of her motion to appoint a special representative for the deceased defendants, the plaintiff sought leave to file her second amended complaint in order to add the Association as a defendant to her breach of fiduciary duty claim. On appeal, she concedes that the Association was already named as a defendant on that claim. She also sought to file a second amended complaint to include an allegation in the discrimination count that the

---

[4]The report of Mr. Feinberg's death in *Wolinsky II* was premature. He died on May 22, 2006.

Association acted through its agents and servants. However, we have upheld the dismissal of that count.

¶ 89　　In any event, by reversing the order denying her motion to appoint a special representative, we have granted the relief sought by the plaintiff. The denial of leave to file a second amended complaint is affirmed.

¶ 90　　　　　　　　　　　　　　　E. Punitive Damages

¶ 91　　The plaintiff contends that Judge Maras erred when she granted summary judgment to the Association on the plaintiff's request for punitive damages. We disagree.

¶ 92　　In Illinois, punitive damages are viewed as punishment. *Ford v. Herman*, 316 Ill. App. 3d 726, 733-34 (2000). The imposition of punitive damages serves three distinct purposes: (1) retribution against the defendant; (2) as a deterrence to the defendant from committing similar conduct in the future; and (3) as a deterrence to others from engaging in similar conduct. *Ford*, 316 Ill. App. 3d at 734. Punitive damages are not favored because of their punitive effect. *Spires v. Mooney Motors, Inc.*, 229 Ill. App. 3d 917, 923 (1992).

¶ 93　　In *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404 (1990), our supreme court set forth the degree of culpability required for the imposition of punitive damages. The court stated in pertinent part as follows:

> " 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate–which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.' [Citation.] In this context, willful and wanton misconduct approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." (Internal quotation marks omitted.) *Loitz*, 138 Ill. 2d at 415-16 (quoting Restatement (Second) of Torts § 908, cmt. b, at 464-65 (1979), and *Bresland v. Ideal Roller & Graphics Co.*, 150 Ill. App. 3d 445, 457 (1986)).

In determining whether to impose punitive damages, the trial court must first determine as a matter of law "whether the cause of action in general and the facts of the particular case provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. *** If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact." *In re Estate of Wernick*, 127 Ill. 2d 61, 84 (1989).

¶ 94　　A breach of fiduciary duty may warrant an award of punitive damages, depending on the specific facts of the case. *Wernick*, 127 Ill. 2d at 85. The Board's breach of fiduciary duty was its failure to comply with the bylaws. While the plaintiff alleged in count I of the amended complaint that the Board "had full and complete knowledge of the contents" of the bylaws, the Board argued that the declaration, which did not provide for such a vote, controlled over the bylaws, which did not specifically refer to the right of first refusal. See *Wolinsky I*, 114 Ill. App. 3d at 532.

¶ 95    Under the allegations of count I, the Board members' breach of fiduciary duty by failing to comply with the bylaws was not outrageous conduct akin to a criminal act. While the Board's interpretation of the relationship between the declaration and the bylaws was erroneous, it does not establish that they intentionally and with malice conducted the vote in violation of the bylaws in order to deprive the plaintiff of the unit she wished to purchase.

¶ 96    The plaintiff's reliance on *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365 (2004), is misplaced. In that case, the appellate court upheld an award of punitive damages to a law firm based on the defendants' intentional breach of their fiduciary duty. The defendants, associate attorneys in the law firm, planned to start their own firm. While remaining members of the firm, they secretly secured a commitment from a large business client of the law firm for future business and obtained financing based on that commitment. They also used confidential information belonging to the law firm and voted themselves large bonuses, knowing that they were leaving the firm. The trial court found the defendants' actions "were intentional and in deliberate disregard of the fiduciary relationship" between them and the firm, and described the conduct as "malicious." *Dowd & Dowd, Ltd.*, 352 Ill. App. 3d at 388.

¶ 97    The plaintiff merely speculates that certain board members' dislike for her and her lifestyle led them to knowingly violate the bylaws to prevent her from purchasing Unit 21F. However, there is no factual evidence that the Board's decision not to hold the vote of all the unit owners as required by the bylaws was intentional or malicious, as was the case in *Dowd & Dowd, Ltd.*

¶ 98    As there was insufficient proof of aggravating circumstances in connection with the failure to conduct the necessary vote, the plaintiff was not entitled to punitive damages on her breach of fiduciary claim. The grant of summary judgment to the Association on the issue of punitive damages with regard to that claim was proper.

¶ 99                              F. Prejudgment Interest

¶ 100   The plaintiff contends that Judge Maras erred when she granted summary judgment to the Association on her request for prejudgment interest. A trial court's determination that equitable considerations support an award of prejudgment interest is reviewed for an abuse of discretion. *Prignano v. Prignano*, 405 Ill. App. 3d 801, 821 (2010). In this case, Judge Maras granted summary judgment on this issue, ruling that, as a matter of law, the plaintiff was not entitled to prejudgment interest. The ruling is subject to *de novo* review by this court. *Millennium Park Joint Venture, LCC*, 241 Ill. 2d at 309.

¶ 101   "The goal of proceedings sounding in equity is to make the injured party whole." *Wernick*, 127 Ill. 2d at 86. In Illinois, prejudgment interest may be awarded when warranted by equitable considerations and denied if the award would not comport with justice or equity. *Wernick*, 127 Ill. 2d at 87. In a case involving a breach of fiduciary duty claim, reasoning underlying an equitable award of prejudgment interest is to make the party whole by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money. *Wernick*, 127 Ill. 2d at 87. Such an award provides compensation for any economic loss occasioned by the injured party's inability to use his or her money. *Wernick*, 127 Ill. 2d at 87.

¶ 102 In *Wernick*, the supreme court reversed the denial of prejudgment interest in a breach of fiduciary duty case. In 1977, the respondent had given the decedent a 90-day non-interest-bearing note for $90,000, in exchange for his interest in real property. The respondent made no payments on the note until 1984. In the meantime, the respondent had sold the property for $375,000, retaining the proceeds for himself. Since the respondent's actions deprived them of the use of their money for a substantial period of time, the court held that equity required an award of prejudgment interest to make the petitioners whole. *Wernick*, 127 Ill. 2d at 88; see also *Prignano*, 405 Ill. App. 3d at 822 (the plaintiff was entitled to prejudgment interest on her breach of fiduciary duty claim to prevent the respondent from profiting from his wrongful retention of insurance proceeds).

¶ 103 The Association argues that the plaintiff was not entitled to an award of prejudgment interest because the Board did not withhold any money from the plaintiff and did not profit from its violation of the bylaws. In *Wilson v. Cherry*, 244 Ill. App. 3d 632 (1993), the reviewing court noted that it could not award equitable prejudgment interest in a civil case for negligence. Nonetheless, the court recognized that, "an injured party who is eventually compensated for the amount of the loss nevertheless suffers detriment from the lack of use of the money eventually paid as compensation because of the inability to use the money from the day of loss until the day compensation is paid." *Wilson*, 244 Ill. App. 3d at 640. In this case, the cause of action sounds in equity, and whether the plaintiff is entitled to prejudgment interest depends on whether equity requires such an award to make the plaintiff whole.

¶ 104 The plaintiff argues that she was entitled to prejudgment interest on the money she spent as a result of the Board's breach of its fiduciary duty to her. If so, the plaintiff was deprived of the use of this money for a substantial period of time. Since the goal of an award of equitable prejudgment interest is to make the victim whole, we cannot say, as a matter of law, that the plaintiff was not entitled to an equitable award of prejudgment interest until all the evidence is presented. Whether the plaintiff is ultimately entitled to an award of prejudgment interest is a decision for the trial court, after all the evidence is presented. See *Prignano*, 405 Ill. App. 3d at 822 (following trial, the plaintiff could amend her pleadings to seek equitable prejudgment interest where the evidence at trial supported such an award).

¶ 105 We conclude that the Association was not entitled to summary judgment on the plaintiff's request for prejudgment interest.

¶ 106                                    G. Jury Trial Demand

¶ 107 The plaintiff contends that Judge Maras erred in striking her demand for a jury trial on her claim for breach of fiduciary duty. The right to a jury trial in a particular action is a legal question which the court reviews *de novo*. *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 174 (2009).

¶ 108 The Illinois Constitution guarantees the right to trial by jury as it existed at common law. *Prodromos*, 389 Ill. App. 3d at 173; Ill. Const. 1970, art. I, § 13. The right to a jury trial only attaches in those actions where such right existed under English common law at the time the Illinois Constitution was adopted. *Prodromos*, 389 Ill. App. 3d at 173-74. "It is the nature of the controversy, not the form of the action or the damages sought, that determines whether

-18-

such right existed under the English common law at the time of the adoption of the constitution." *Prodromos*, 389 Ill. App. 3d at 174. "At common law, equitable claims were creations of the courts of chancery and were tried without the right to a jury." *Bank One, N.A. v. Borse*, 351 Ill. App. 3d 482, 488 (2004).

¶ 109    Illinois courts have recognized that an action seeking damages for breach of a fiduciary duty is an equitable action. *Borse*, 351 Ill. App. 3d at 488. The court in *Borse* noted that our supreme court rejected the Restatement's view that an action for breach of fiduciary duty is a tort; instead, a claim for breach of fiduciary duty is controlled by the substantive laws of agency, contract and equity. *Borse*, 351 Ill. App. 3d at 488 (citing *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445 (1989)). In *Prodromos*, this court held that, "under controlling precedent," seeking damages for breach of fiduciary duty was "an equitable claim that is tried without the right to a jury." *Prodromos*, 389 Ill. App. 3d at 174.

¶ 110    The plaintiff's reliance on *People ex rel. O'Malley v. 6323 North LaCrosse Avenue*, 158 Ill. 2d 453 (1994), is misplaced. The supreme court held that the defendant was entitled to a jury trial in *in rem* proceedings for the enforcement of statutory forfeitures because jury trials were available in such actions prior to the adoption of the Illinois Constitution. See *6323 North LaCrosse Avenue*, 158 Ill. 2d at 459. The plaintiff also relies on *Bank of America, N.A. v. Bird*, 392 Ill. App. 3d 621 (2009). Even though the statute did not authorize a jury trial, the reviewing court concluded that there was a right to a jury trial in civil actions alleging violations of the statute because, at common law, jury trials were available in civil actions recognizing such theories of liability. See *Bird*, 392 Ill. App. 3d at 627-28. The plaintiff's reliance is misplaced since a breach of fiduciary duty is an equitable action for which there was no right to a jury trial at common law. In addition, pursuant to a supervisory order by the supreme court, the opinion in *Bird* was vacated. See *Bank of America, N.A. v. Bird*, No. 111643 (Ill. Jan. 14, 2011) (table). In its subsequent order, the appellate court did not reach the jury trial issue. See *Bank of America, N.A. v. Bird*, 2011 IL App (5th) 080188-U (unpublished order pursuant to Supreme Court Rule 23).

¶ 111    We conclude that the plaintiff was not entitled to a jury trial on her breach of fiduciary duty claim.

¶ 112                                 H. Damages

¶ 113    The plaintiff contends that the award of $56,992 in damages was against the manifest weight of the evidence. She argues that Judge Hogan erred when he disregarded Mr. Salono's testimony as to his analysis of the impact on her net worth and allowed Mr. Kleszynski to testify to the current value of Unit 7B and Unit 21F.

¶ 114                             1. *Standard of Review*

¶ 115    We will reverse a judgment following a bench trial only if the judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). " 'A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *Chicago's Pizza, Inc.*, 384 Ill. App. 3d

at 859 (quoting *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001)).

¶ 116    We will reverse the trial court's decision only where the appealing party presents evidence that is strong and convincing enough to overcome, completely, the evidence and presumptions existing in the opposing party's favor. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000). As a reviewing court, we may not overturn a judgment merely because we disagree with it, or as the trier of fact, we might have come to a different conclusion. *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 510 (2005).

¶ 117                                   2. *Discussion*

¶ 118    Judge Hogan found that Mr. Solano's calculation of the plaintiff's loss of net worth was merely a compounded interest calculation, not an analysis of the plaintiff's investment history or her net worth. The record supports Judge Hogan's rejection of Mr. Solano's opinion that the plaintiff suffered a loss between $545,000 and $323,000 to her net worth as a result of the Board's violation of the bylaws.

¶ 119    According to Mr. Solano's testimony, using components such as the interest rates, additional costs to purchase Unit 7B as opposed to Unit 21F, the additional mortgage payments and repair costs, he applied 30-year treasury bonds and compounded the interest over 30 years. As of January 2011, the impact on the plaintiff's net worth was $545,000. After removing some of the extra purchasing costs and the cost of repairs to Unit 7B, which might ultimately be disallowed as damages, the impact was $323,000. He acknowledged that he did know how the plaintiff would be investing the yearly interest she would have been receiving.

¶ 120    The plaintiff also argues that Judge Hogan erred when he found that the plaintiff did not carry her burden of proof to establish that the present day value of Unit 21F was higher than the present day value of Unit 7B. She maintains that Mr. Kleszynski's opinion testimony on redirect examination that Unit 7B was worth $20,000 more than Unit 21F should not have been admitted because his opinion had not been disclosed. Therefore, the only credible valuation testimony was Mr. Solano's, who opined that Unit 21F was worth $15,000 more than Unit 7B.

¶ 121    A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Jones v. DHR Cambridge Homes, Inc.*, 381 Ill. App. 3d 18, 34 (2008). An abuse of discretion occurs only where no reasonable person would agree with the trial court's conclusion. *Jones*, 381 Ill. App. 3d at 32.

¶ 122    There is no dispute that Mr. Kleszynski's opinion was not previously disclosed. However, Judge Hogan ruled that the plaintiff had "opened the door" by asking Mr. Kleszynski on cross-examination whether he had an opinion as to the current value of Unit 21F and the basis for that opinion. "Where a plaintiff opens the door to the elicitation of certain testimony, the plaintiff cannot complain that he was prejudiced by any cross-examination defense counsel raised regarding that testimony." *Bryant v. LaGrange Memorial Hospital*, 345 Ill. App. 3d 565, 578 (2003) (testimony barred by discovery rules was admissible on redirect examination where the cross-examination had opened the door to the

testimony). We find no abuse of discretion in Judge Hogan's ruling.

¶ 123 Moreover, while the trial court may not reject the uncontradicted and unimpeached testimony of an expert arbitrarily, it is still within the province of the trier of fact to weigh the credibility of the expert evidence and to decide the issue. *In re Glenville*, 139 Ill. 2d 242, 251 (1990). The fact that Judge Hogan found the plaintiff's valuation evidence insufficient to carry her burden of proof does not indicate that he rejected it arbitrarily. See *Glenville*, 139 Ill. 2d at 251 ("Disbelieving expert testimony does not mean that the testimony was arbitrarily rejected.").

¶ 124 We conclude that the award of damages was not against the manifest weight of the evidence.

¶ 125 III. CONCLUSION

¶ 126 We affirm the grant of partial summary judgment to the plaintiff on liability and the denial of the Association's motion for summary judgment on the plaintiff's breach of fiduciary duty claim in count I of the amended complaint. We affirm the grant of summary judgment to the Association on the issue of punitive damages and affirm the striking of the plaintiff's jury trial demand. The award of damages to the plaintiff is affirmed. The dismissal of the plaintiff's discrimination claim in count II of the amended complaint is affirmed.

¶ 127 We reverse the order denying the plaintiff's motion to appoint a special representative for Messrs. Kadison, Feinberg and Bell. The denial of the plaintiff's motion to file a second amended complaint is affirmed.

¶ 128 We reverse the grant of summary judgment to the Association on the plaintiff's request for an award of equitable prejudgment interest on her breach of fiduciary duty claim and remand this case for a hearing to determine if the plaintiff is entitled to an award of prejudgment interest.

¶ 129 Affirmed in part and reversed in part; cause remanded with directions.