# William T. Hopkins

*v.*

# Elihu Granger *et al.*

1. Jurisdiction in chancery—*trusts.* It is one of the oldest heads of chancery jurisdiction, to execute and control trusts and trust funds.

2. So, where a deed of trust was given by one of several makers of a promissory note, to secure the same, and he afterwards sold and conveyed the property embraced in the trust deed to another of the makers, the latter has his remedy in chancery in case of a misapplication of the money realized by a sale under the trust deed, by there being a less sum credited upon the debt than the property was sold for.

3. Trusts—*of expenses attending their execution—fraud.* Where the trustee under a deed of trust, and the creditor, procure a fraudulent sale to be made of the land, for the purpose of defeating the title of a subsequent purchaser thereof, the expenses and charges for making such sale will not be allowed in a suit by such purchaser to adjust the equities of the parties in respect to such trust fund.

4. Same—*of the expense of setting aside such sale.* And where the creditor for whose security the trust deed was given, in the execution of the fraudulent design under the sale, placed the title to the land in a third person, and beyond his control, and, in order to the proper application of the trust fund, a suit was instituted to set aside such fraudulent sale, the creditor, upon his promise so to do, would be required to pay the costs of that suit, occasioned by his fraudulent conduct.

5. Same—*what costs should be allowed in such case.* In ascertaining the costs of such suit, the subsequent purchaser, to defraud whom the sale was made, and in whose name the suit was brought, would be allowed his reasonable expenses incurred in its prosecution, but not for his time in attending to it.

6. Answer in chancery—*when not evidence.* An answer in chancery not sworn to, or even if sworn to, the oath being waived by the bill, is not evidence.

7. Evidence—*of affidavits, on a final hearing in chancery.* Depositions taken on a motion to dissolve an injunction may, under the 14th section of the statute entitled, "Ne exeat and injunctions," be read on the final hearing of the cause; but affidavits taken in reference to such motion can not be read on the final hearing.

· 8. Cloud upon title—*who may ask to have it removed.* Where a party shows he has no title to land, it is not for him to complain that there is a cloud upon it.

9. Interest—*when allowed.* Where a fraudulent sale has been had under a deed of trust, and the sale set aside, interest may be properly allowed on a judgment for the debt, which accrued between the time of setting aside the fraudulent sale and a subsequent sale under the deed.

Appeal from the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

The opinion states the case.

Mr. B. C. Cook and Mr. William T. Burgess, for the appellant.

Mr. U. F. Linder, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

It appears that appellant, on the tenth day of June, 1868, filed a bill in the Cook circuit court against appellees. In it, he charges that, on the first of January, 1858, appellant, with Couch and Gould, executed to Granger two notes of that date, each for $600, payable, with interest, one in six and the other in eighteen months from date. At the same time, Couch, in order to secure the same, made to Shipman a deed of trust on two tracts of land, one containing seventy and the other eighty acres. The deed provided that, in case of default in payment of the notes, or any part thereof, then, on the application of the holder thereof, Shipman, after giving notice as specified, should sell the same at auction, make a deed to the purchaser, out of the proceeds pay the costs or expenses of advertising and selling the premises, and the principal and interest due upon the notes, or upon payment of the notes by the makers, re-convey the premises to Couch.

It further appears that, soon afterwards, Couch and wife conveyed the premises to appellant, subject to the deed of trust, and, on the ninth of March, 1858, it was recorded, and became notice to Granger and Shipman; that, about the fifteenth of February, 1859, Granger caused Shipman to advertise the land for sale under the trust deed on the third. of March, 1859; that, on the second day of March, appellant filed in the Grundy circuit court a bill in chancery against Granger and Shipman, alleging that the sale, if allowed to proceed, would be contrary to the duty of the trustee, and to equity and good conscience; and prayed that the sale might be restrained. A writ of injunction was thereupon issued, and served upon Shipman and Granger.

That afterwards, about the first of September, 1859, while the suit was still pending and the injunction still in force, Shipman made a conveyance of the premises, for the consideration of $20, to Addison Weeks. The deed recited the execution of the trust deed; that notice of sale was given; that Weeks had become the purchaser for that sum; but there was no advertisement, in fact, of the time, place and terms of the sale, in any newspaper published in the county, as required by the deed of trust; that Shipman did not attend the sale, and if made, it was by one George H. Robinson, at the instance and on the procurement of Granger, and in the absence of Shipman. This was all done without the knowledge or consent of appellant, with intent to defraud him; that Weeks, in fact, paid no money on the purchase, but it was falsely pretended that the sale was made to him, to give the transaction the color of a *bona fide* transaction; that Weeks was ignorant of the transaction, was not present at the sale, but, when afterwards informed of it, acceded to the arrangement to aid Granger and Shipman in carrying out their fraud; that he never paid any money on the sale; that he confessed judgments in favor of several persons in the superior court, for various sums, upon which executions were issued to the sheriff of Grundy county, who levied upon the

lands as the property of Weeks, which were sold thereunder to Taylor for the amount of the judgments. The land not having been redeemed, the sheriff executed a deed to the purchaser; that the levy, sale and sheriff's deed were all procured by Taylor to further the fraudulent designs of Granger and Shipman, to defraud appellant out of this land.

For the purpose of setting aside these various proceedings, appellant filed a bill in the Grundy circuit court, against Granger, Shipman, Weeks and Taylor, on the nineteenth of July, 1862, in which he charged the same facts as are set forth in this bill. In it, among other things, it was prayed that the title of•Weeks and Taylor might be held for naught; that, on the hearing, those deeds were decreed to be canceled. Taylor prosecuted a writ of error to the supreme court to reverse that decree, but, on a hearing, it was affirmed; that thereupon Shipman again proceeded to advertise the land under the trust deed, on the twenty-seventh day of November, 1865, and sold the same for $1610, which was paid to Granger, and Shipman executed a deed of conveyance to the purchaser, and appellant, to cure a defect in the notice, executed a release to the purchaser.

The bill alleges that, in consequence of the fraudulent acts of Granger and Shipman, appellant was put to great expense and sustained loss by being compelled to employ counsel to set aside the sale; also to sustain the decree in the supreme court on error; that he lost time, incurred expense and costs in prosecuting and defending that litigation, by which he had been damnified and suffered loss to the amount of $1500, which Granger and Shipman should pay; that, by reason of the fraudulent sale, appellant had been prevented from selling the land to pay the debt, by which a large amount of interest had accrued, which they should pay; that, on the twenty-fourth day of September, 1859, Granger sued appellant, and the other makers of the notes, in the Cook circuit court, and, on the twelfth of October following, recovered a judgment thereon for the sum of $1524.62, the amount due

and unpaid; that, on the twenty-fourth of March, 1866, execution was issued, under which lands were sold for $100, of which $68.06 was paid to Granger; that afterwards an *alias* execution was issued to the sheriff of Grundy county, endorsed by the $68.06 and $1024.49 as of November 27, 1865; that Granger, instead of allowing appellant the sum of $1610, less the costs of sale, for which the land was sold by Shipman, only allowed a credit of $1024.49, and has refused, fraudulently, to credit the balance on the debt; that the judgment should be deemed satisfied; that Granger and Shipman are insolvent; that Granger claims that $677 is due on the judgment, which should be restrained until these several matters are adjusted; that appellant also, at the same time, executed a trust deed to Shipman to secure the same notes, on forty acres of land in Grundy county; that Granger caused Shipman, in 1859, to advertise it for sale, and when it was offered, Granger bid the sum of $100, and received a deed therefor, but that, owing to his neglect in recording the trust deed, a judgment recovered against appellant became a prior lien; that Granger gave no credit on the notes for the amount bid on this tract, as the title had become absolute in the purchaser under the judgment. Appellant offers to allow the costs of that sale in an account, when taken, if Granger shall release this forty acres to him.

There was a prayer for an answer without oath, that an account might be taken, including loss and damages sustained by appellant, and for money expended, &c., and for a decree against Granger and Shipman for whatever sum may be found due, and for an injunction to restrain the collection of the judgment.

Granger filed an answer, in which he admits the execution of the notes, trust deed, the sales, suits and decrees as charged, but sets up as a defense that, at the sale by Shipman, he became the purchaser, and had the land conveyed to his nephew, Weeks; that appellant then refused to recognize Granger's right to the land, whereby it became necessary that legal

proceedings should be taken to divest Weeks of the title, and appellant consented that Granger might use his name for the purpose; that he employed counsel to draw a bill in appellant's name, which was filed, and the proceedings named in the bill were had, the sale set aside, and a new sale made, as charged in the bill; alleges that appellant agreed to come to Chicago and look over the charges, which should be deducted from the amount for which the land was sold, that the balance might be credited on the judgment, but failing to do so, he made the deductions and endorsed the credit; that he afterwards sued out an execution, which was stayed, on appellant's motion and claim of a larger credit; that the matter of such deductions from the sale was, by consent, referred to the master in chancery to determine, which he afterwards did. He alleges that all the credits to which appellant is entitled have been endorsed on the judgment.

Appellant then amended his bill, and in the amendment alleges, that Granger only had the bill prepared and filed, but did nothing more to have Weeks divested of title; that it became necessary to amend the bill, and to employ counsel to prosecute the suit, and to attend to the case in the supreme court, the expense of which he paid. He denies the power of the master in chancery to settle and adjust equitable rights in a court of law. Granger, in answer to the amended bill, refers to his former answer.

A replication was filed, and a hearing had on the bill, answer, replication, exhibits and proofs. The bill was dismissed and a decree rendered against complainant for costs. To reverse that decree this appeal is prosecuted, and various errors are assigned upon the record.

The bill on its face presents a case requiring the interposition of a court of equity. It shows that a trust was created, and that Shipman accepted it; that he sold the trust property for $1610, while, by a misapplication of the fund, appellant received a credit of but $1024.49. It stands admitted that the sale was made for that sum, and the credit thus given. If

this is true, and the balance was not properly applied, there was such a misapplication of the trust fund as invested a court of equity with jurisdiction. It is one of the oldest heads of chancery jurisdiction, to execute and control trusts and trust funds. The bill and answers show that the land sold for a larger sum, to the amount of $585.51, than was credited on the debt to secure which the deed of trust was executed, and entitled appellant to a larger credit than was given.

It is true, Granger, in his answer, claims that a dispute having arisen as to the deductions which should be made from the gross amount of the sale, and appellant having procured a stay of execution until the amount should be ascertained, and a larger credit given, on the motion then pending in the court from which the execution issued, that it was agreed the question should be submitted to the master in chancery to be decided, and report; and that he returned the sum due on the execution at $391.91. But his report, or any other evidence of his finding, is not contained in the certificate of evidence contained in the record. The answer not under oath, or, if sworn to, the oath being dispensed with by the bill, is not evidence. It devolved on Granger to prove the allegations of his answer, and in this he has failed. The court, therefore, erred in dismissing the bill on the proof adduced on the trial.

It is manifest, that Granger or Shipman had no right to retain any expenses or charges for making the fraudulent sale by Robinson. It was not only unauthorized, but was made for the admitted purpose of defrauding appellant out of the land. To allow compensation for performing, or attempting to perform, so unrighteous an act would be monstrous. This should not have been allowed by the master.

As to whether Granger should have paid the expense of obtaining the vacation of that sale, it would seem no more than just, if he agreed that he would. He, by his fraud, had placed the property beyond his reach, and he had also placed himself in the position that appellant could have compelled a

credit on the debt for the full value of the land. Had appellant taken that course, Granger would have thereby lost his debt, and the land would have been held by Weeks. Appellant could have shown all the facts on a motion to have the judgment entered satisfied, and thus have obtained relief without filing a bill in equity. It therefore appears that the bill, and all proceedings under it to set aside that sale, were for the benefit of Granger, and he received the full benefit of it, and he should pay the expense according to his promise, if one was made. Whether the reference to the master was of such a character as to estop appellant from questioning his report, does not appear from this record. The order under which it was made, and the manner in which he stated the account, do not appear from the evidence. We do not see whether it was stated *ex parte*, or on notice to appellant, and hence express no opinion on that question.

As regards the allowance to appellant for the expenses of prosecuting the suit to set aside the sale, he should be allowed for money actually paid or expense incurred, if Granger agreed to pay them, unless appellant has estopped himself by a reference to the master, and by appearing, or being notified to appear before the master when he stated the account. But we fail to perceive why he should receive pay for his time in attending to that suit. He should, if at all, be allowed only for reasonable expenses.

It is insisted that the court below erred in excluding the affidavit of appellant, used on the motion to dissolve the injunction, when the case was on a final hearing. We have been referred to no authority sanctioning such a practice.

The 14th section of the chapter entitled, "Ne exeat and injunctions," (Gross' Stat.) declares that the testimony to be heard on a motion to dissolve, aside from the bill and answer, shall be by depositions in writing, as in other cases in chancery proceedings, except the affidavits which may have been filed with the bill or answer, which may be read on such motion as heretofore; and the depositions taken to dissolve

an injunction may be read on the final hearing of the cause. From this provision, it is manifest that the affidavits thus taken should not be read on the final hearing. It only authorizes them to be read on the motion, and the depositions on the final hearing. To sanction. such a practice would cut off the unquestioned right of the opposite party to cross examine witnesses. There was no error in rejecting the affidavits.

We do not perceive any reason why appellant should have a release from Granger of the forty acre tract purchased by him at the master's sale. He shows by his bill that he has no title, and if so, it is no concern of his whether there is a cloud on the title.

As to the interest which accrued on the judgment between the fraudulent and the last sale, we see no reason why it should be deducted. Granger did not agree to do so, nor is there any evidence that appellant would, or even could, have sold the land to pay the debt. Had he desired to avoid such accumulation of interest, he should have paid the debt.

We perceive no necessity for considering the question of the assessment of damages on the dissolution of the injunction. But for the error indicated, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*