BANK ONE, N.A., as Trustee, Plaintiff and Counterdefendant-Appellee, v. GARY BORSE *et al.*, Defendants (Susan Clontz, Defendant and Counterplaintiff-Appellant).

Second District    No. 2—03—0361

Opinion filed July 8, 2004.

Stephen D. Helm, Jacqueline J. Gust, David W. Krula, James M. Wagner, and Damon M. Fisch, all of Steve Helm & Associates, of Naperville, for appellant.

Barry S. Alberts and Francis P. Morrissey, both of Schiff, Hardin & Waite, L.L.P., of Chicago, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Following a bench trial, the trial court entered judgment in favor of plaintiff, Bank One, N.A. (Bank One), on defendant Susan Clontz's counterclaim alleging breach of fiduciary duty. In her counterclaim, Clontz alleged that Bank One breached its fiduciary duty as the trustee of the Anton G. Borse Amended and Restated Declaration of Trust (the trust). Clontz alleged that Bank One failed to properly manage the assets of the trust and failed to deal fairly with all of the trust's beneficiaries. On appeal, Clontz contends that (1) the trial court abused its discretion in refusing to extend the discovery cutoff date; (2) the trial court erred in striking her written demand for a jury trial; (3) the trial court's finding that Bank One did not breach its fiduciary duty as trustee was against the manifest weight of the evidence; and (4) the trial court abused its discretion in awarding attorney fees. We affirm.

## I. Factual and Procedural Background

On January 7, 1994, Anton G. Borse (decedent) executed the trust, naming Clontz and his other seven children as beneficiaries. Upon decedent's death on February 1, 1994, the trust appointed Bank One as trustee. The trust called for the establishment of three separate trusts: (1) the "Borse Industries Trust," which was to hold 100% of the stock of Borse Industries, Inc., a plastics molding company founded by decedent; (2) the "Borse Leased Real Estate Trust," which was to hold title to all of the trust's real property that was leased to Borse Industries; and (3) the "Family Trust," which was to hold the remainder of decedent's assets. The trust provisions required that, upon decedent's death, the trustee pay all resulting estate and inheritance taxes from the "principal of the trust estate." The trust further provided that the trustee could not pay the estate and inheritance taxes using the stock of Borse Industries or "the real estate which is leased to [Borse Industries]."

On November 28, 1994, Bank One filed a federal estate tax return on behalf of decedent's estate. The return reported a gross estate of $16,083,920. The two largest assets of the estate were Borse Industries, valued at $4,100,000, and the real estate leased to Borse Industries, which was valued at $4,880,000. The Family Trust was valued at negative $2,652,506, as the estate's unpaid tax liabilities exceeded the assets of the Family Trust. The estate's federal tax liability was $6,193,728. The available cash assets were insufficient to pay all of the estate taxes. Bank One paid $2,500,000 of the estate tax and obtained an extension for the payment of the remaining balance of the tax.

Pursuant to the directives of the trust, Bank One oversaw the management of Borse Industries between the date of decedent's death in 1994 and the ultimate sale of the business in 1997. The trust directed Bank One to vote the shares of Borse Industries to elect the same six-member board of directors that was in place at the time of decedent's death. These directors included two of decedent's sons, Gary Borse and Mark Borse, and decedent's son-in-law, Brian Beth. The other directors were Robert Tylutki, Joseph Nuzzo, and the company's general counsel, Edmund P. Boland. Boland was decedent's personal attorney and he also drafted the trust. Bank One retained Boland as counsel for the trustee. Bank One voted the shares of the company to retain each of the six directors. The trust further provided that Bank One could choose a seventh director at its discretion. Bank One did not exercise this power of appointment until 1996, when it appointed William Welnhofer to serve as the seventh director.

During Bank One's oversight of Borse Industries, sales increased at an annual rate of 7.4%. During this same time, however, net operating income declined from $1.4 million in 1993 to $456,000 in 1995. In 1996, Bank One retained the consulting firm of Starshak & Associates (Starshak) to determine the reason for the decrease in the company's profitability. Starshak produced a written report and made several recommendations for improving the management of the company. Bank One acted on some, but not all, of the recommendations. Following Bank One's assumption of the trusteeship in 1994, Borse Industries applied for a commercial loan from Bank One's loan department. After performing its own inquiry into the company's finances, Bank One's loan department declined to extend Borse Industries a loan.

In 1997, with the unanimous approval of the directors, Bank One sold Borse Industries to Madison Capital Partners for $7.8 million. At the time of the sale, each of the six original directors received "golden parachutes." Gary Borse, Mark Borse, and Brian Beth each received $300,000, and Edmund Boland, Joseph Nuzzo, and Robert Tylutki each received $50,000. The golden parachutes were paid pursuant to a resolution of the board of directors ratified by decedent prior to his death. Receipt of each director's payment was contingent upon the individual director remaining with Borse Industries until such time as the company was sold by Bank One.

The net cash proceeds from the sale of Borse Industries, after all closing adjustments, was approximately $4,500,000. As the trust's provisions prohibited the payment of the estate taxes from the sale of Borse Industries stock, Bank One sought consent from the trust beneficiaries to use the proceeds from the sale to pay the unpaid taxes.

Clontz refused to consent and also objected to the trustee's accountings.

On October 8, 1997, Bank One filed a chancery action seeking a construction of the trust's provisions regarding payment of the estate taxes and approval of Bank One's accountings. On December 10, 1998, the trial court entered an order allowing Bank One to pay the outstanding federal estate taxes from the proceeds of the sale of Borse Industries. The trial court also permitted Bank One to pay the $1,105,701.01 in interest charges that had accumulated on the outstanding taxes. In permitting these payments, the trial court reserved for later determination the issue of the proper allocation of these payments among the three separate trusts.

Clontz subsequently filed a complaint against Bank One in the law division, alleging breach of fiduciary duty. As amended, the complaint alleged that Bank One breached its fiduciary obligations to the beneficiaries in that Bank One (1) failed to exercise reasonable business judgment in the operation and sale of Borse Industries; (2) failed to fully inform itself of the business dealings, management, and financial status of Borse Industries; (3) failed to timely appoint a seventh director, as required under the trust; (4) failed to take timely corrective action once it discovered that Borse Industries had been mismanaged; (5) failed to remove the board of directors and permitted the payment of the golden parachutes; (6) failed to remove Boland as attorney for the trust despite his status as a director of Borse Industries and a recipient of a golden parachute; (7) violated the "prudent investor rule" (760 ILCS 5/5 (West 1998)) by failing to sell Borse Industries immediately following decedent's death; (8) failed to distribute the income and profits of Borse Industries to the trust beneficiaries; (9) failed to file an action to construe the trust's provisions governing the payment of estate taxes immediately following decedent's death; (10) filed the estate tax return, knowing that its reported valuation of Borse Industries was substantially undervalued; and (11) failed to amend the federal estate tax return to reduce the amount of the gross estate by the golden parachutes that had yet to be paid to the directors. Clontz requested the trial court to order Bank One to pay her damages as compensation for the diminution of her share of the trust assets resulting from Bank One's breach of fiduciary duty. She also requested the trial court to order Bank One to return its trustee and attorney fees. Clontz's complaint was accompanied by a written jury demand.

At the onset of Clontz's case, the trial court entered a scheduling order setting April 30, 1999, as the deadline for the completion of all fact discovery. On Clontz's motion, the trial court extended this

deadline to June 18, 1999. On July 21, 1999, Clontz moved again for an extension of the discovery deadline. In her motion, Clontz argued that she had been unable to take any depositions due to Bank One's delay in responding to her production requests. Clontz further explained that she recently had to retain new counsel after her prior counsel withdrew as a result of a conflict. The trial court denied the motion, explaining, "There has got to be a day, Rule 219. Otherwise any discovery order I enter would have no significance at all." The trial court also denied Clontz's two other requests to reopen discovery.

Bank One subsequently moved to strike Clontz's jury demand. Bank One argued that Clontz's claim alleging breach of fiduciary duty was an equitable action despite her request for money damages. Bank One argued that the Illinois Constitution does not provide the right to a jury trial in equitable proceedings. On October 4, 2001, following a hearing, the trial court granted Bank One's motion to strike Clontz's jury demand.

On January 10, 2002, on Clontz's motion, the trial court entered an order consolidating her complaint with Bank One's pending action in the chancery division. The trial court's order provided that Clontz's complaint would be deemed a counterclaim to Bank One's chancery action.

Trial commenced on May 6, 2002. On the first day of trial, Clontz stipulated to the correctness of Bank One's accountings and withdrew her objection to using the proceeds from the sale of Borse Industries to pay the estate taxes. As a result of the resolution of these issues, the only matter left for trial was Clontz's counterclaim. The trial lasted two weeks and encompassed the testimony of 21 witnesses. Due to the large amount of testimonial evidence, we will incorporate the relevant evidence within our analysis of each of the contentions raised on appeal.

Following the trial, the trial court found that Bank One had not breached its fiduciary duty and entered judgment in favor of Bank One on the counterclaim. Specifically, the trial court found that Bank One had exercised appropriate judgment in its decision not to pay the remaining balance of the estate taxes until after the sale of Borse Industries in 1997. The trial court found that Bank One had exercised appropriate business judgment in its oversight and management of Borse Industries between 1994 and 1997. The trial court further found that Bank One had not breached its fiduciary duty in its administration of the trust or breached its duty to treat the beneficiaries fairly. The trial court also found that Bank One did not breach its fiduciary duty through its decision to retain Edmund Boland as the trustee's attorney. Finally, the trial court denied Clontz's request for attorney fees

and her request that Bank One be required to reimburse the trust for the attorney fees it incurred in the litigation. Clontz filed this timely appeal.

## II. Analysis

On appeal, Clontz raises four primary contentions. First, Clontz contends that the trial court abused its discretion in refusing to extend the discovery cutoff date. Second, Clontz contends that the trial court erred in striking her jury demand. Third, Clontz contends that the trial court's judgment in Bank One's favor on her counterclaim was against the manifest weight of the evidence. Finally, Clontz contends that the trial court abused its discretion in permitting trust assets to be used to pay Bank One's attorney fees and in denying her request that the trust pay her attorney fees. Only the jury demand issue is addressed in the published portion of this opinion (in section B); our discussion of the remaining issues is designated as nonpublishable pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23).

### A. Discovery Matters

The material in this section is designated nonpublishable pursuant to Supreme Court Rule 23.

### B. Right to a Jury Trial

Clontz's next contention on appeal is that the trial court erred in striking her demand for a jury trial on her counterclaim. Clontz argues that her counterclaim was initially filed in the law division of the circuit court and sought money damages from Bank One. Clontz thus argues that her complaint sought a legal remedy and that she was entitled to a jury trial pursuant to article I, section 13, of the Illinois Constitution (Ill. Const. 1970, art. I, § 13). Bank One responds that a complaint alleging breach of fiduciary duty is an equitable action for which no constitutional right to a jury trial exists.

■ Section 13 of article I of the Illinois Constitution provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13. Our supreme court has construed this provision as guaranteeing the right of trial by jury as it existed at common law. *Martin v. Heinhold Commodities, Inc.*, 163 Ill. 2d 33, 72 (1994). The Illinois Constitution thus provides a right to a jury trial only in those cases where such right existed at common law at the time the constitution was originally adopted. *Martin*, 163 Ill. 2d at 72-73. Contrary to Clontz's assertions, the right to a jury trial does not depend on whether money damages are sought. *Martin*, 163 Ill. 2d at 74-75. Instead, the right to a jury trial requires an examination of English common law. *Martin*, 163 Ill. 2d at 72. A litigant's right to a

jury trial is a legal determination that we review *de novo. Martin*, 163 Ill. 2d at 74-77.

■ At common law, equitable claims were creations of the courts of chancery and were tried without the right to a jury. *Martin*, 163 Ill. 2d at 78. As our supreme court has previously noted, at common law, actions brought against a trustee by beneficiaries seeking damages resulting from the trustee's breach of trust could be heard only in a court of equity. *Hopkins v. Granger*, 52 Ill. 504, 510 (1869) ("It is one of the oldest heads of chancery jurisdiction, to execute and control trusts and trust funds"); see also *Maguire v. City of Macomb*, 293 Ill. 441, 453 (1920). Article 197 of the Restatement (Second) of Trusts acknowledges this historical classification for such an action, stating that "the remedies of the beneficiary against the trustee are exclusively equitable." Restatement (Second) of Trusts § 197 (1959). Legal scholars have similarly noted that courts of equity have original and complete jurisdiction over trusts and are the sole forum to enforce the rights of a beneficiary because they arose out of a trust. See G. Bogert & G. Bogert, Trusts & Trustees § 870, at 136 (rev. 2d ed. 1995).

In more recent decisions, Illinois courts have similarly recognized that an action seeking damages for breach of fiduciary duty is an equitable action. For example, in *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445 (1989), our supreme court expressly rejected the Restatement's view that an action for breach of fiduciary duty is a tort (see Restatement (Second) of Torts § 874 (1979)). Instead, the supreme court regarded a claim for breach of fiduciary duty as controlled by the substantive laws of agency, contract, and equity. *Kinzer*, 128 Ill. 2d at 445. Relying on *Kinzer*, reviewing courts have consistently characterized complaints for breach of fiduciary duty as equitable actions. See *Martin v. Heinold Commodities, Inc.*, 240 Ill. App. 3d 536, 540 (1992), *aff'd in part*, 163 Ill. 2d 33 (1994); *Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc.*, 229 Ill. App. 3d 119, 124 (1992).

■ Relying on *In re Estate of O'Donnell*, 8 Ill. App. 2d 348 (1956), Clontz argues that courts of equity do not have exclusive jurisdiction over all actions for breach of trust against trustees. In *O'Donnell*, the reviewing court held that a beneficiary's action seeking damages for breach of trust against the deceased trustee's estate was a legal action and that the beneficiary was entitled to a jury trial. *O'Donnell*, 8 Ill. App. 2d at 352-53. In *O'Donnell*, the trustee's alleged breach was her failure to place the trust corpus in an interest-bearing account. *O'Donnell*, 8 Ill. App. 2d at 352.

As exemplified in *O'Donnell*, modern courts have been more willing to permit beneficiaries to pursue actions at law for certain types of breaches of trust. See Restatement (Second) of Trusts § 198 (1959)

(providing that a beneficiary may maintain an action at law against the trustee if the trustee has breached its duty to pay money or transfer property immediately and unconditionally to the beneficiary); G. Bogert & G. Bogert, Trusts § 157, at 563 (5th ed. 1973). However, this modern trend was not the law at the time that the Illinois Constitution was originally adopted; instead, as detailed above, actions for breach of trust were equitable proceedings to which the right to a jury trial did not attach. See *Hopkins*, 52 Ill. at 510. We note that the reviewing court in *O'Donnell* did not review English common law in reaching its decision and instead limited its inquiry to the relief requested in the beneficiary's complaint. *O'Donnell*, 8 Ill. App. 2d at 352. Courts must not focus on the nature of the remedy sought by the litigant in determining whether the right to a jury trial attaches. See *Martin*, 163 Ill. 2d at 74-75. Because the reviewing court in *O'Donnell* did not limit its inquiry to the status of the law at the time the Illinois Constitution was adopted, we decline to follow that court's resolution of this issue. Instead, we conclude that Clontz did not have a constitutional right to a jury trial on her counterclaim alleging breach of fiduciary duty. Therefore, we affirm the trial court's order striking her jury demand.

## C. Breach of Fiduciary Duty

The material in this section is designated nonpublishable pursuant to Supreme Court Rule 23.

## D. Attorney Fees

The material in this section is designated nonpublishable pursuant to Supreme Court Rule 23.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McLAREN and CALLUM, JJ., concur.