2024 IL App (1st) 230069

No. 1-23-0069

Opinion filed December 20, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| EDWARD SHROCK and BABY SUPERMALL, LLC, | ) ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellants, | ) | |
| | ) | 2016 L 11407 |
| v. | ) | |
| | ) | Honorable |
| MARTHA MEIER n/k/a MARTHA | ) | John J. Curry, Jr., |
| MAGGIORE, GRUND & LEAVITT P.C. | ) | Judge, presiding. |
| DAVID I. GRUND, MICHAEL | ) | |
| KOENIGSBERGER, ROSENFELD HAFRON | ) | |
| SHAPIRO & FARMER, a partnership, | ) | |
| HOWARD A. ROSENFELD, NORMAN L. | ) | |
| HAFRON, KATHRYN D. FARMER, EDWIN | ) | |
| H. SHAPIRO, LAW OFFICES OF JEAN | ) | |
| CONDE, P.C., and JEAN CONDE, | ) | |
| | ) | |
| Defendant-Appellees. | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiffs Edward Shrock and Baby Supermall, LLC, appeal the circuit court's orders dismissing certain of their claims, striking their demand for a jury trial, denying leave to amend, and entering a directed verdict in favor of defendants. Plaintiffs raise three issues on appeal: (1) whether the circuit court erred in granting a directed verdict against plaintiffs on the count of aiding

and abetting the breach of a fiduciary duty and in dismissing all other claims, (2) whether aiding and abetting the breach of a fiduciary duty is a claim entitling plaintiffs to a jury trial such that the circuit court erred in striking plaintiffs' jury trial demand, and (3) whether the circuit court abused its discretion in denying plaintiffs leave to amend because leave to amend should be liberally granted. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff Baby Supermall, LLC, is a manager-managed limited liability company formed in October 2003. Robert Meier was the majority shareholder and manager; he owned 87.5% of the company. Plaintiff Edward Shrock owned the other 12.5% of Baby Supermall. The company's operating agreement required profits to be distributed between the two owners proportionate to their ownership interests. However, according to Shrock, at some point Meier wanted to buy out Shrock's share of the company, but Shrock was unwilling to sell. In response to this refusal, Meier began a campaign to force Shrock out.

¶ 4     First, Meier increased his own salary and reduced Shrock's. Meier also refused to allow Shrock to participate in any corporate decision-making and withheld information about Baby Supermall's operations. Then, Meier created a series of what he referred to as "profit-sharing" agreements. These agreements were between Meier, acting in his capacity as Baby Supermall's manager, and Meier, acting in his individual capacity. They provided that Baby Supermall "would pay Meier a higher percentage of its profits in exchange for Meier's agreement to defer his salary and guarantee BSM's debts and expenses." Additionally, Baby Supermall hired Meier's second wife, Sylvia Suby, and her son, and paid them 20% and 10% of the company's profits, respectively.

Together, these actions effectively zeroed-out Baby Supermall's balance sheet and ensured that the company had no profits to distribute to Shrock.

¶ 5    In 2009, after repeated demands for his share of Baby Supermall's profits went unanswered, Shrock sued Meier for breach of fiduciary duty. Five years later, a "jury found that Meier willfully and wantonly violated his fiduciary duties to Shrock ***." *Shrock v. Ungaretti & Harris, Ltd.*, 2019 IL App (1st) 181698, ¶ 27. Shrock was awarded $11,164,500 in compensatory and punitive damages. *Id.* ¶ 32. As a result, Meier filed for bankruptcy.

¶ 6    Defendant Martha Maggiore (formerly known as Meier) was married to Meier for over 25 years when, in 2005, she and Meier began divorce proceedings. More than four years later, the two entered into a settlement agreement which, among other terms, required Meier to pay Maggiore support payments equal to $33,333 a month for ten years. Meier's ownership interest in Baby Supermall, however, remained his alone.

¶ 7    On November 18, 2016, plaintiffs filed suit against defendants Maggiore and her attorneys. Plaintiffs have since filed three amended complaints. The last complaint asserted claims for fraud, constructive fraud, aiding and abetting breach of fiduciary duty, intentional interference with contract, conversion, and unjust enrichment. The circuit court dismissed the constructive fraud and conversion claims with prejudice and the fraud, intentional interference with contract, and unjust enrichment claims without prejudice. The court allowed the claim for aiding and abetting breach of fiduciary duty to go forward.

¶ 8    Rather than seeking to replead any of the dismissed counts, plaintiffs elected to pursue the surviving claim. The case went through discovery and was set for trial. Plaintiffs demanded a jury trial, but the circuit court granted defendants' motion to strike the jury demand. After the close of

discovery, plaintiffs moved for leave to file a fourth amended complaint, which was denied. On the second day of trial, when plaintiffs rested, the circuit court entered a directed verdict in favor of defendants. This timely appeal followed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 9                                    II. ANALYSIS

¶ 10                               A. Threshold Matters

¶ 11    Plaintiffs seek review of the circuit court's April 15, 2019, order dismissing various counts of their complaint "without prejudice;" however, there is a jurisdictional bar that prevents this court's review of those portions of the order. The jurisdiction of the appellate court is limited by the Illinois Supreme Court's rules. *Lewis v. NL Industries*, 2013 IL App (1st) 122080, ¶ 5. The rules provide that this court may only hear appeals from final judgments or certain interlocutory appeals. See Ill. S. Ct. Rs. 303, 304 (eff. Mar. 8, 2016), 306 (eff. Oct. 1, 2020), 307 (eff. Nov. 1, 2017). And this court has "no discretion to excuse compliance with the rules [the Illinois Supreme Court] establishes pursuant to its supervisory authority." *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 427 (2005). Accordingly, this court cannot review orders from the circuit court that lie beyond its jurisdiction.

¶ 12    A dismissal without prejudice is not a final or otherwise appealable order. *DeLuna v. Treister*, 185 Ill. 2d 565, 570 (1999). And a dismissal without prejudice as to some counts in the complaint is not a "step in the procedural progression" leading to the disposition of the remaining counts. See *Village of Lisle v. Village of Woodridge*, 192 Ill. App. 3d 568, 573 (1989) (holding that the dismissal of five counts of the plaintiff's complaint "was not a step in the procedural progression leading to the summary-judgment order as to the other six counts"). Therefore, this court does not have jurisdiction to review the portions of the circuit court's April 15, 2019 order

dismissing certain counts without prejudice. This court has jurisdiction to hear the rest of plaintiffs' appeal. See Ill. S. Ct. Rs. 301 (eff. Feb. 1, 1994), 303.

¶ 13 Plaintiffs also purport to have appealed the circuit court's February 13, 2018, order dismissing all counts against defendants Jean Conde and the Law Offices of Jean Conde, P.C. However, plaintiffs made no mention of the Conde defendants in their opening brief aside from listing them in the case caption. They did not explain the Conde defendants' relationship to this case, and they did not argue that the circuit court erred in dismissing these defendants from the case. It is only in reply, after being alerted by the Conde defendants' brief to their apparent oversight, that plaintiffs finally offer some argument, but this untimely challenge is insufficient to avoid forfeiture. It is the obligation of the appellants to include in their briefing "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Failure to provide argument in the opening brief results in that argument being forfeited. *Id.* ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Accordingly, we will not consider any of plaintiffs' arguments related to the Conde defendants.

¶ 14                                    B. Dismissal Order

¶ 15 The circuit court dismissed portions of plaintiffs' complaint with prejudice pursuant to section 2-615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-615 (West 2018). A section 2-615 motion to dismiss "tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Project44, Inc. v.*

*FourKites, Inc.*, 2024 IL 129227, ¶ 18. This court must "accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 429 (2006). We will not dismiss a complaint "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Project44, Inc.*, 2024 IL 129227, ¶ 18. The grant of a section 2-615 motion to dismiss is reviewed *de novo*. *Id.*

¶ 16                                    1. *Constructive Fraud*

¶ 17     Plaintiffs argue that the circuit court erred in dismissing their constructive fraud claim because they were not required to plead the existence of a fiduciary duty or, alternatively, because defendants owed them a fiduciary duty. When a party breaches "a legal or equitable duty arising out of a fiduciary relationship, a presumption of fraud arises." *Vermeil v. Jefferson Trust and Savings Bank of Peoria*, 176 Ill. App. 3d 556, 564 (1988). "This type of fraud is called 'constructive fraud.' " *Id.* To prove constructive fraud, a party must demonstrate "(1) a fiduciary relationship; (2) a breach of the duties that are imposed as a matter of law because of that relationship; and (3) damages." *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 64 (citing *Lawlor v. North American Corporation of Illinois*, 2012 IL 112530, ¶ 69). Significantly, "[c]onstructive fraud can arise *only* if there is a confidential or fiduciary relationship between the parties." (Emphasis added.) *Prodromos v. Everen Securities, Inc.*, 341 Ill. App. 3d 718, 726 (2003). Thus, plaintiffs were required to plead a fiduciary relationship and the failure to do so is fatal to their constructive fraud claim.

¶ 18     Illinois law recognizes two types of fiduciary relationships—fiduciary relationships as a matter of law and fiduciary relationships as a matter of fact. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 591-92 (2011). A fiduciary relationship as a matter of law arises "from the existence

of a particular relationship, such as an attorney-client or principal-agent relationship." (Internal quotation marks omitted.) *Miller v. Harris*, 2013 IL App (2d) 120512, ¶ 21. A fiduciary relationship as a matter of fact comes about when " 'one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party.' " *Id.* (quoting *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 58)). Shrock argues that, while Maggiore's relationship to him falls within neither category, she was nevertheless a fiduciary because "Meier's fiduciary relationship with Shrock and BSM 'extend[s]' to those conspiring, aiding, or acting in concert with him."

¶ 19    Illinois law does not recognize a method of imputing a fiduciary duty onto a third party. Instead, there are various causes of action that plaintiffs can bring against nonfiduciaries for their involvement in the unlawful acts of fiduciaries. An aggrieved party may recover where a third party induces a breach of fiduciary duty (see *Village of Wheeling v. Stavros*, 89 Ill. App. 3d 450, 454 (1980)), where a third party aids and abets the breach of a fiduciary duty (see *Praither v. Northbrook Bank & Trust Co.*, 2021 IL App (1st) 201192, ¶ 48), or where a third party conspires with a fiduciary to breach a fiduciary duty. See *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 20.

¶ 20    Additionally, to the extent that Shrock argues that a constructive trust creates a fiduciary duty in defendants, that argument is equally unavailing. In equity, a person who commits fraud or a fiduciary who breaches a fiduciary duty and thereby unlawfully obtains the property of another holds that property in a constructive trust for the wronged party. *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988). If a third party takes possession of the property with knowledge that the property was wrongfully obtained, then the third party takes possession subject to the constructive trust. *Conway*

*v. Conners*, 101 Ill. App. 3d 121, 128 (1981). A constructive trust arises "by operation of law" and exists only "when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property." *Suttles*, 126 Ill. 2d at 193. Because the constructive trust does not exist unless and until the court creates it, a constructive trust does not retroactively create a fiduciary duty where there was not one such that the initial transferal of the property becomes a breach of that duty. Accordingly, because Maggiore did not owe Shrock a fiduciary duty and because Meier's fiduciary duty cannot extend to Maggiore through either common law or equitable principles, Shrock cannot state a claim for constructive fraud.

¶ 21                                    2. *Conversion*

¶ 22    Plaintiffs next argue that the circuit court erred in dismissing their claim for conversion because they can maintain a claim for conversion even if they did not own the converted property. While Plaintiffs may accurately state the law, they nevertheless failed to state a claim. Conversion occurs when a plaintiff is wrongfully deprived of "an identifiable object of property." *In re Thebus*, 108 Ill. 2d. 255, 260 (1985). To recover for conversion, a plaintiff must prove "(1) that he or she has a right to the property; (2) that he or she has an absolute and unconditional right to the immediate possession of the property; (3) that he or she made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Kovac*, 2014 IL App (2d) 121100, ¶ 97. Importantly, "[e]very person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part." (Internal quotation marks omitted.) *Wright v. Wilson*, 179 Ill. App. 630, 636 (1913); see *Niemeyer v. Williams*, 2008 WL 906051, at *16 (C.D. Ill. Mar. 31, 2008) (same). This rule holds true even

where the benefitting party "was entirely innocent and ignorant of the plaintiff's rights at the time." *Associates Discount Corp. v. Walker*, 39 Ill. App. 2d 148, 153 (1963); see *Fortech, LLC v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 811-12 (2006) (quoting *Schwartz v. Schwartz*, 365 N.Y.S.2d 589, 592 (Sup. Ct. 1975)).

¶ 23 Plaintiffs cannot recover lost money in an action for conversion unless the money is "capable of being described as a specific chattel." *In re Thebus*, 108 Ill. 2d at 260. Further, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Id.* Therefore, plaintiffs must be able to show "that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *Id.* at 261. While "it is not necessary for purposes of identification that money should be specifically earmarked" (*id.* at 260), there must be some allegation that the money is otherwise identifiable. See *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 940 (N.D. Ill. 2000).

¶ 24 Shrock's claim fails at this threshold inquiry. He did not—and indeed cannot—allege how much of the money that Meier used to pay the divorce settlement, if any, belonged to him; instead, he alleges only that he was entitled to 12.5% of Baby Supermall's profits. Thus, Shrock did not have legal claim to all of the money used to pay the divorce settlement; Meier was entitled to the other 87.5% of Baby Supermall's profits. Although the amount of money owed Meier owed to Shrock may be identifiable, that money "had no characteristics distinguishing it from the rest of the operating funds of" Baby Supermall. *Kovac*, 2014 IL App (2d) 121100, ¶ 100. Once Meier comingled the funds that were lawfully his with the money unlawfully obtained and used those

comingled funds to pay Maggiore, it became impossible to know which unlawfully obtained funds belonging to Shrock, if any, were paid to Maggiore.

¶ 25 However, Shrock also brought a derivative lawsuit on behalf of Baby Supermall. Baby Supermall's lawsuit does not suffer the same deficiency as Shrock's. The complaint alleges that "Martha received at least $2.8 million, all of which was paid directly from Meier's 'profit sharing' schemes either directly to Martha from BSM's bank account, or from BSM after passing through Meier's bank account and in violation of the Operating Agreement, LLC Act, injunction, and/or Meier's fiduciary obligations to BSM and Shrock." The allegation that *all* of the money belonged to Baby Supermall is sufficient at the motion to dismiss stage to show that the money was specific and identifiable property. See *Steines v. Menrisky*, 2017 WL 2243097, at *5 (N.D. Ill. May 23, 2017) ("[B]ecause the funds in question would have come directly from Simplesoft's corporate treasury, Simplesoft *did* have an allegedly absolute and unconditional right to them." (Emphasis in original.)).

¶ 26 Nevertheless, the derivative lawsuit fails because plaintiffs did not allege that anyone ever made a pre-lawsuit demand for Maggiore to return the money. While Shrock repeatedly demanded that Meier pay him the 12.5% profits that he was owed, Shrock did not allege that he, or anyone else representing him or Baby Supermall, ever demanded that Maggiore return the money to him or Baby Supermall. Illinois appellate courts have repeatedly held that a pre-lawsuit demand for the allegedly converted property is necessary to sustain a claim. See *Rybak v. Dressler*, 178 Ill. App. 3d 569, 588 (1988) (affirming the dismissal of a conversion claim where "defendants utterly failed to plead or prove an essential element of such a cause: a demand for possession of the funds allegedly converted by Rybak); *A.T. Kearney, Inc., v. INCA International, Inc.*, 132 Ill. App. 3d

655, 664-65 (1985) ("[A]n action for conversion under these circumstances must include a demand for possession or it cannot be said that there has been a deprivation."); *Hoffman v. Allstate Insurance Co.*, 85 Ill. App. 3d 631, 633-34 (1980) (same).

¶ 27 There is an exception to this requirement where "*the defendant* has sold or otherwise disposed of the property in question and thus no longer has possession thereof." (Emphasis added). *A.T. Kearney, Inc.*, 132 Ill. App. 3d at 664 (citing *Monroe County Water Cooperative v. City of Waterloo*, 107 Ill. App. 3d 477, 481 (1982)). However, the complaint contains no allegations regarding whether Maggiore did anything with the funds that she received. Therefore, Shrock's derivative lawsuit fails because Baby Supermall did not demand that Maggiore return the unlawfully obtained money.

¶ 28                                    C. Directed Verdict Order

¶ 29 At the close of plaintiffs' evidence, the circuit court granted defendants' motion for a directed verdict on the claim of aiding and abetting a breach of fiduciary duty. 735 ILCS 5/2-1110 (West 2018). Plaintiffs argue that the circuit court erred in entering a directed verdict because they presented a *prima facie* case of aiding and abetting at trial. Ruling on a directed verdict motion in a non-jury case involves a two-step analysis. "First, the court must determine, as a matter of law, whether the plaintiff has presented a *prima facie* case by proffering at least 'some evidence on every element essential to [the plaintiff's underlying] cause of action.' " *In re Estate of Coffman*, 2023 IL 128867, ¶ 52 (quoting *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154 (1980)). If the circuit court determines that the plaintiff has failed to meet this burden, there is no need to move to the second step; "the court should grant the motion and enter judgment for the defendant." *Id.* If the plaintiff satisfies this burden, the court must consider "the totality of the evidence presented, including any

evidence that is favorable to the defendant." *Id.* ¶ 53. After weighing the evidence, if "the court determines that the evidence warrants a finding in favor of the defendant, it should grant the defendant's motion and enter a judgment dismissing the action." *Id.* ¶ 54. Where, as here, a court grants the motion at the first step, our review is *de novo*. *Id.* ¶ 52.

¶ 30    Aiding and abetting the breach of a fiduciary duty has three elements. To survive at the first step, plaintiffs must provide some evidence that "(1) [Meier] performed a wrongful act causing injury, (2) [defendants were] aware of [their] role in [the] misconduct at the time [they] provided assistance to him, and (3) [defendants] knowingly and substantially assisted [Meier] in the violation." *Praither*, 2021 IL App (1st) 201192, ¶ 48. Plaintiffs failed to do so here. Notably, plaintiffs do not even cite the elements of aiding and abetting let alone point to any evidence relevant to those elements in their argument for reversing the circuit court's entry of a directed verdict. It is the role of the parties, not the court, " 'to frame the issues for decision.' " *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). Accordingly, we will not "search the record for unargued and unbriefed reasons to reverse a trial court judgment." *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978). Plaintiffs' failure to raise any facts in support of their argument presumably means there are no such supporting facts to be found.

¶ 31    What's more, plaintiffs failed to provide a trial transcript on appeal, without which this court cannot determine what evidence was presented below. Thus, even if plaintiffs' failure to adequately frame the issues on appeal could be excused, there is no way for this court to independently determine whether the trial court erred. The burden to provide a complete record rests with plaintiffs, and "[a]ny doubts which may arise from the incompleteness of the record will

be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Accordingly, we must "presume[] that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* Therefore, the trial court did not err in granting defendants motion for a directed verdict.

¶ 32                                        D. Jury Demand

¶ 33    Plaintiffs further argue that the circuit court erred in striking their demand for a jury trial because aiding and abetting is an intentional tort that is independent of the underlying breach of fiduciary duty claim. The Illinois Constitution provides the right to a jury trial "in all cases where such right existed at common law at the time the constitution was adopted." (Internal quotation marks omitted.) *Martin v. Heinhold Commodities, Inc.*, 163 Ill. 2d 33, 72-73 (1994). "There was then and there is now no constitutional right of trial by jury in equity." *Lazarus v. Village of Northbrook*, 31 Ill. 2d 146, 148 (1964). The parties agree that resolving whether plaintiffs were entitled to a jury trial turns on whether aiding and abetting the breach of a fiduciary duty is a legal claim or an equitable claim.[1] This is a legal question that we review *de novo*. *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 174 (2009) (citing *Bank One, N.A. v. Borse*, 351 Ill. App. 3d 482, 487-88 (2004)).

¶ 34    A breach of a fiduciary duty claim traditionally sounds in equity. See *Kinzer ex rel. City of Chicago v. City of Chicago*, 128 Ill. 2d 437, 445 (1989); see also *Bank One*, 351 Ill. App 3d at 488 (collecting cases). Although, as in the case of Shrock's suit against Meier, Illinois courts have

---

[1] Plaintiffs also argue that they are entitled to a jury trial based on the breach of contract and fraud claims in their complaint as well as a conspiracy claim that they never raised below. We cannot entertain arguments regarding any of these claims, either because we do not have jurisdiction or because they are not properly presented.

permitted the recovery of damages, "this modern trend was not the law at the time that the Illinois Constitution was originally adopted." *Bank One*, 351 Ill. App. 3d at 489. Thus, plaintiffs are not entitled to a jury trial when bringing claims for breach of fiduciary duty. See *id.* at 488-89.

¶ 35 Logically, it follows that a suit for aiding and abetting the breach of a fiduciary duty must also be equitable in nature. "[C]laims for civil conspiracy and aiding and abetting are not independent torts, *i.e.*, they both require underlying conduct that is tortious." *Chadha v. North Park Elementary School Association*, 2018 IL App (1st) 171958, ¶ 58. Thus, because the existence of a claim for aiding and abetting is dependent on the existence of an underlying unlawful act, an aiding and abetting claim's characterization as a legal or equitable claim is also dependent on the character of the underlying act. It would be anomalous to recognize a plaintiff's right to a jury when he sues a person for assisting a fiduciary in breaching a duty to the plaintiff but to deny the plaintiff the same right when he sues the fiduciary. The better rule is to say that the nature of the underlying action and the nature of the aiding and abetting claim are the same. That is, "[i]f the underlying action is equitable in nature, a claim of aiding and abetting that underlying cause of action must also be equitable." *Damage Recovery Systems, Inc. v. Tucker*, 2005 WL 388597, *2 (Dist. Del. Feb. 2, 2005). Here, because Meier's breach of a fiduciary duty was equitable in nature, plaintiffs' claim that defendants aided and abetted that breach is also equitable.

¶ 36 Moreover, while Illinois courts have recognized claims civil aiding and abetting for many years, no Illinois appellate court recognized aiding and abetting the breach of a fiduciary duty as a cause of action until 2003 (*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 28-29 (2003)), well after the "time the constitution was adopted." *Heinhold Commodities*, 163 Ill. 2d at 73-74. *Thornwood* provides strong evidence that there was no such claim, let alone the right to a jury trial

on that claim, at common law. Accordingly, the circuit court did not err in granting defendants' motion to strike the jury demand.

¶ 37                                    E. Leave to Amend

¶ 38    Finally, plaintiffs argue that they should have been given a fourth opportunity to amend their complaint because leave to amend should be liberally allowed and defendants would not have been prejudiced by any amendment to the pleadings. Circuit courts are given broad discretion in determining whether to allow plaintiffs an opportunity to amend their pleadings; thus, "this court will not find that denial of a motion to amend is prejudicial error unless there has been a manifest abuse of such discretion." *Loyola Academy v. S&S Roof Maintenance*, 146 Ill. 2d 263, 273-74 (1992). Nevertheless, the circuit court must exercise its discretion consistent with the principle that leave to amend pleadings prior to a final judgment should be liberally allowed. See *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 27. "[J]udicial discretion must be exercised within the bounds of the law [citation], and any question regarding the proper exercise thereof is always subject to our review [citation]." *People v. Brockman*, 143 Ill. 2d 351, 363 (1991). Accordingly, to determine whether the circuit court abused its discretion in ruling on a motion seeking leave to amend we consider four factors: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy*, 146 Ill. 2d at 273.

¶ 39    Defendants argue that the lack of a record of the circuit court's ruling requires this court to affirm, as it prevents this court from reviewing the circuit court's reasoning. However, defendants misapprehend our role in reviewing the circuit court's denial of leave to amend. The Illinois

- 15 -

Supreme Court made clear in *Loyola Academy* and its progeny that the role of the appellate courts is to conduct the four-factor analysis independently of the circuit court. See, *e.g.*, *id.* at 276 (holding that the amendment met all four factors and therefore "the denial of the motion to amend was prejudicial error as a result of a manifest abuse of discretion" without addressing the circuit court's reasoning); *In re Estate of Hoover*, 155 Ill. 2d 402, 417-18 (1993) (same); *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432-33 (1999) (affirming the denial of leave to amend by considering the four factors irrespective of the lower court's reasoning). Significantly, none of the *Loyola* factors reference the decision-making of the lower court because permitting the court to deny leave to amend where all four factors were met "would mean a construction of section 2-616 leading to an absurd, inconvenient and unjust consequence." *Loyola Academy*, 146 Ill. 2d at 276; see 735 ILSC 5/2-616(a) (West 2018) ("At any time before final judgment amendments may be allowed on just and reasonable terms ***."). Therefore, a record of the circuit court's reasoning is not necessary for this court's review.

¶ 40    Regardless, the *Loyola* factors are not met here, and they do not otherwise weigh heavily enough in favor of granting leave to amend to conclude that the circuit court abused its discretion in denying leave to amend. Reframing the claims in the complaint as civil conspiracies and adding additional claims prejudices defendants by requiring them to provide different, additional evidence to refute those claims. See *Cook ex rel. Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 43. For instance, Robert Meier passed away in 2021. His testimony was not relevant to the fraud claim but would have been very relevant to a conspiracy to commit fraud claim. Had plaintiffs sought to amend their complaint in 2019, when their claims were dismissed, rather than 2022, defendants would have had the opportunity to depose Meier prior to his death. Thus, the proposed

amendments to the complaint were untimely and prejudicial. Moreover, plaintiffs were afforded three prior opportunities to amend their complaint to adequately state a claim. They are not entitled to unlimited bites at the apple.

¶ 41                                    III. CONCLUSION

¶ 42    The judgment of the circuit court of Cook County is affirmed.

¶ 43    Affirmed.

***Edward Shrock v. Martha Meier*, 2024 IL App (1st) 230069**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16 L 11407; the Hon. John J. Curry, Jr., Judge, presiding. |
| **Attorney for Appellants:** | John S. Xydakis, of Law Office of John S. Xydakis, of Chicago, for appellants. |
| **Attorneys for Appellees:** | Blair Zanzig & John F. Hiltz, of Hitlz Zanzig & Heiligman LLC, of Chicago, for appellee Martha Meier; Rebecca M. Rothmann & John Cerney, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellees Law Offices of Jean Conde & Jean Conde. |